## Charles H. Comstock, Administrator of Addison J. Comstock, deceased, v. Medora E. Smith.

*Foreign contract.* A contract, for the payment of money, made and to be executed in a foreign country, would be payable in the lawful money of that country, whether so expressed in the contract or not.

*Evidence: Foreign currency.* Proof of the foreign law is not necessary to show the value of foreign money. The proof required is similar in kind to that necessary to show the value of chattels in a distant market; such as will enable the jury to express, in our money, the value of the sum shown by the proof to be due in foreign money.

*Evidence: Fraud: Scienter.* It is competent for a party charged with misrepresentations, under the influence of which a contract is alleged to have been made, to show that he was not aware of the untruthfulness of the statements imputed to him; and that he had grounds for believing them to be correct.

*Charge of the Court: Immaterial error.* A verdict will not be disturbed for an error in a charge which operated to the advantage of the plaintiff in error.

*Examination of witnesses: Discretion of the Court.* Where the Circuit Judge, in his discretion, has allowed a wide range of examination by a defense to show fraud, and testimony is admitted in reply of doubtful relevancy; a court of review ought not to reverse a judgment for an error in admitting such testimony, unless clearly satisfied that its admission had prejudiced the legal rights of the plaintiff in error.

*Rebutting evidence: Relevancy.* The relevancy of rebutting evidence is to be tested, not by its convincing or persuasive character; but whether it tends to cut down, limit, explain or obviate the defense, or to illustrate some legitimate answer to the defense.

*Heard April 22, 23. Decided May 10.*

Error to Lenawee Circuit.

This case came into the Circuit Court for the County of Lenawee, by appeal from the disallowance by commissioners, appointed by the Probate Court of that county, of a claim presented by Medora E. Smith, against the estate of Addison J. Comstock, deceased, arising upon a mortgage executed by the deceased and Darius C. Jackson, on the 25th day of January, 1866, then of the village of Oil Springs, in the Province of Canada, conditioned for the payment "of two thousand dollars of lawful money of Canada," and which the mortgagors covenanted to pay. An issue was formed in the Circuit Court for a trial by a jury; the defense being, that the mortgage was given on the purchase of the property described in it, the value of which was fraudulently misrepresented by the agent of the claim-

ant, and by means of which misrepresentations, the deceased and Jackson had been induced to purchase the property. The jury found a verdict for the claimant.

The cause now comes into this Court by writ of error, the errors being assigned upon the rulings of the Circuit Court in the admission of testimony, and upon the charge of the Court instructing the jury, "that if the plaintiff (below) was entitled to recover upon the proofs in the case, for breach of the contract declared on, it being payable in the lawful money of Canada, she was entitled to recover the present value of Canada currency as compared with legal tender notes of the United States; that is, that she was entitled to the premium which Canada money was then worth over United States legal tender notes, and that if the plaintiff had proved Canada money to be worth any sum above legal tender notes, the jury should add that sum to their verdict."

*A. L. Millard* and *Eldridge & Walker*, for plaintiff in error.

*Robinson & Brooks*, for defendant in error.

GRAVES, J.

The defendant in error presented a claim before the commissioners appointed to examine and adjust claims against the estate of Addison J. Comstock, deceased, and the same was disallowed, whereupon the claimant appealed to the Circuit Court.

An issue was made up in that Court under the statute and tried before a jury, who returned a verdict for the claimant; and the administrator of the estate has brought the case to this Court, upon exceptions to the admission of evidence and the charge to the jury. The claim litigated in the Court below was upon a covenant by decedent and others to defendant in error, contained in a mortgage made

in Canada on the 25th of January, 1866, on an acre and a half of oil land, on which were two oil wells, and which mortgage and covenant were intended to secure in part the payment of the purchase price of the premises and certain personal property included in the trade. The covenant stipulated that the covenantors should pay to the covenantee, the complainant, two thousand dollars of *lawful money of Canada*, with interest at seven per centum, as follows: One third of said sum of two thousand dollars in six months from date: one-third in twelve months from date, and the remaining one-third in eighteen months from date, with interest at said rate on the unpaid balance, when the payments should fall due respectively. The chief defense, as stated in a special notice attached to the plea, was, that on the sale of the property of which the money specified in the covenant was in part the consideration, the claimant, Mrs. Smith, made certain fraudulent representations, by which the covenantors were damnified to an amount beyond the sum called for by the covenant. The errors assigned are very numerous, but we do not think it necessary to notice them in detail. The first was abandoned on the argument, and the residue may be examined under two general heads.

The questions which properly arrange themselves under the first head relate to the evidence given and requisite to ascertain the amount called for, in this state, by this Canadian contract, and the charge of the Court as to the rule of damages.

It was urged on the trial, and is insisted upon here by plaintiff in error, that the covenant called for a sum in the legal money of Canada. That in order to fix the value in our money of the sum specified by the covenant, it was necessary to ascertain what was lawful money in Canada; that it was to be presumed that what was lawful money in Canada was the subject of positive written law in the Province, and that as a consequence it was incumbent on the

claimant to make proof of that law by an exemplification or sworn copy, or in some other established mode.

The view we take of the general question makes it unimportant to consider the validity of the points most pressed by the plaintiff in error in this branch of the case. The force and effect of the covenant were in no degree altered by the words " of lawful money of Canada," since, without these words it must have been intended that the agreement made, and to be performed in Canada, contemplated a payment of the given sum in dollars of legal money of the Province.

The case may therefore be regarded as though the words "of lawful money of Canada" had not been in the instrument. The end to be attained upon the trial, in relation to that part of the case we are now considering, was to ascertain the amount of damages or claim to which the claimant would be entitled in this State, and the enquiry necessary to attain the end did not involve the proof of the law of Canada. We are not aware that it has ever been thought necessary in suits in our courts on foreign contracts, when the amount is expressed in sterling money, or other foreign denomination, to require proof of the foreign laws, in order to ascertain the damages to be awarded in American money; and we think no such rule exists anywhere.

It is therefore our opinion, that in this case nothing more was required than to show those facts as to the comparative value of the money of Canada, and of this country, which would enable the jury to express in our money a sum equivalent to that called for in the foreign money. Upon the nature of the evidence bearing upon this question, a few words will be necessary. We think the inquiry to which this evidence belongs is quite analagous to that involved in cases where the market value of chattels is to be ascertained by evidence, and that the employment of the same methods to prove the value here of foreign money, as are authorized to prove the marketable value of com-

modities at a distance, would, by reason of the greater stability and uniformity of value of money, be less likely to lead to erroneous results, than when used to find the value of such commodities.

The general principle, therefore, which governs, in proving the value of chattels in a distant market, may be applied with safety to a matter like that before us, where the foreign state is a near neighbour, and where the money transactions between the two countries are of hourly occurrence.

We shall refer to but two or three cases to illustrate our view of the appropriateness of the material evidence on the trial, bearing on the question we are now considering.

In *Sisson v. Toledo R. R. Co., 14 Mich., 489*, it was held competent to prove the market value of cattle in Albany and New York, as derived from the newspapers in which the state of the market was published daily.

In *re Cliquot's Champagne, 3 Wall., 114*, the Supreme Court of the United States determined that prices current obtained in France, from the agent of a manufacturer or from dealers in the manufactured articles generally, and which had been prepared and used by parties furnishing them in the ordinary course of their business, were admissible to prove the value of wines in France.

In *Kermott v. Ayer, 11 Mich., 181*, a witness having testified that he had had several business transactions with attorneys and lawyers in Canada, and in that way had occasion to learn the value of Canadian and Halifax currency in common use there, as compared with our own, it was considered by this Court that it was competent for him to testify to the value of Canada money, and to state its equivalent in our own.

The principle of these decisions justified the evidence given on the trial by the witnesses as to the value here of the money called for, in Canada, by the covenant on which the defendant in error based her claim.

Having come to this conclusion as to the character of the evidence given and required, in relation to the amount called for in our money, it becomes unnecessary to consider the question raised upon the admission of the Canadian laws.

The objection to that part of the charge, which in substance instructed the jury, that, if they should find for the claimant, she would be entitled to recover, according to the *then* value of Canada currency, in legal tender notes cannot be supported. If any error was committed by this direction, it was not against the defense. It was urged on the trial on the part of the claimant, that the damages should be ascertained by adding to the sum of each payment, when due, as measured by American money, the difference at that time, between such money and that of Canada; and there are many authorities which would support that course. The charge, however, as already noticed, required the jury to add to the whole sum as measured by American money, the difference as it existed at the time of the trial, while the evidence shows that there was a steady decline in the difference between the two kinds of money, in the intervals, owing to a gradual appreciation of our money. It is seen, therefore, that the rule given by the charge was favorable to the defense, and was adapted to reduce the damages far below what they. would have been, under the rule invoked by the defendant in error. Upon reflection, we are unable to perceive how the Court could have given an instruction more favorable to the estate, unless a recovery regulated by a gold standard, and made collectable in gold, should be supposed to be so. But if a course of that kind was practicable or legally admissible, a point we do not determine, we are unable to discover how it could have benefited the estate. Certainly no claim was set up by plaintiff in error for a finding in gold coin, and we are not to presume that one was desired.

In the recent case of *Dalrymple v. Sheehan, 19 Mich.,*

*239*, where one part owner of a vessel had incurred expense for repairs and equipments which involved the procurement of Canada money, we held that the premium necessarily paid in American money, to obtain the Canadian funds, was a proper charge against the other part owner. It appears to us that the charge finds support in the rule laid down in that case.

The questions belonging to the second head relate to the admission of evidence for the claimant, in reply to evidence given by the defense. And all the allegations of error, falling under this head, were only so far noticed in the brief for plaintiff in error as to suggest that they were relied on.

Upon the argument, but two or three of them were commented on by counsel for the estate, and we have been compelled to go through this branch of the case almost wholly unaided. In doing so we have concluded that the great body of objections now referred to, are so clearly untenable, that they demand no greater notice from us, than they received from counsel for plaintiff in error.

This opinion makes it necessary to advert only to such of the rulings as were questioned on the argument by counsel for the estate.

It appears from the bill of exceptions that when the defense proceeded to prove the fraud alleged in the special notice, the Court, under objections by claimants' counsel, permitted a very wide range of inquiry, and allowed a course of examination more extensive, perhaps, than a rigid and technical application of the rules of evidence might be thought to justify. This is a subject, however, that must always present many difficulties to a court of review. It is not to be expected that a bill of exceptions can exhibit a case to an appellate court, in the fullness, and with all the lights and shadings in which it appears in the trial court. The appearances of the witnesses upon the stand, their way of testifying, the emphasis placed upon words and

phrases, the coloring caused by peculiarities of manner, the displays of irony and jest, and the shifting expressions of countenance and the like can never be pictured upon the record. But all of these things are present to the jury, and trial Judge, and are part of the evidence.

These are actions which give rise to peculiar difficulties in deciding upon the relevancy of evidence. In cases where fraud or conspiracy form the groundwork of the action or defense, it is often a matter of much nicety for the trial court to mark out the line which separates the relevant from the irrelevant, or to determine whether a particular piece of evidence is so remote as to be inadmissible or improper as evidence in reply; and the law recognizing these difficulties has wisely permitted a considerable latitude of inquiry, and a pretty large discretion in the courts. When, upon consideration, there is doubt as to the relevancy of evidence offered in a civil case, to prove or disprove fraud, it is generally the safest course to admit it, and leave its value as evidence to be determined by the jury. And a court of review ought not to overturn a verdict in a case of that description, for error in admitting such evidence, unless clearly satisfied that the evidence should have been excluded, and that its admission, in view of the whole case, may have prejudiced the legal rights of the plaintiff in error.

In the present case, as already intimated, the defense was, in part, that the claimant, through her husband, acting as her agent, made false and fraudulent representations to Comstock and Jackson, in respect to the quality, value, and productiveness of the oil wells, and their yield at the time of the purchase, and therefore, that he practiced fraudulent artifices, to deceive them in relation to the then condition and productiveness of the wells. In order to establish this defense, the counsel for the estate were allowed to show negotiations between the claimant's husband and Addison J. Comstock and Darius C. Jackson, and their

20 MICH.—R².

sons, Darius E. Comstock and Addison C. Jackson, in respect to the property in question, and other matters connected with oil speculations, and running back to November, 1865. The defense also gave evidence to show the consideration which was agreed to be paid for the property, that Comstock and Jackson were to assume the payment of a mortgage given by the claimant to DeCau a few months before, when she purchased. Evidence was also given on the part of the estate, as to certain instructions sent by Smith to Marshall, who was running the pumps, to suspend during the night, and steam up in the morning, when Comstock and Jackson were to appear there. Evidence was likewise introduced, on the same side, to show the value of oil property, to prove what effect it would have upon a well to let it lie still for a time; to prove the productiveness of the wells in question for some time before negotiations between the parties commenced; and to prove conversations between one Ennis, the principal manager for claimant, and the witness, Marshall, before the trade was concluded, in relation to the dropping of a pump in one of the wells.

Without referring more particularly to the testimony for the defense, it will suffice to say that it embraced a wide field as to time and circumstances, and was not restricted to the conduct and declarations of Smith, but branched out into conversations between those at work at the wells when he was not present, and into matters apparently quite remote from the real issue. The evidence was directed to show that Smith, by words and acts, knowingly misrepresented the value and productiveness of the property, and thereby actually deceived the purchasers.

In reply to this, the evidence complained of as irrelevant was admitted.

One John Q. Brainard, a witness for claimant, having shown his acquaintance with such property in the vicinity in 1865 and 1866, and that he knew one of these wells

when DeCau owned it, a few months before the sale to Comstock and Jackson, was allowed to testify, under objection, as to the market value of such property along in the fall of 1865 and winter of 1866.

This evidence was certainly not very closely connected with the real issue to be tried, and it appears to have been introduced to meet certain evidence of the defense equally remote. If not technically admissible, it seems to us that its admission, in view of the evidence which had already been given by the defense, could not have prejudiced the legal rights of plaintiff in error.

The question put to DeCau as to how much Smith paid him for one of the wells, called for evidence tending to show the difference between the price paid by claimant, and the price for which she sold; and had some connection with the purchase by Comstock and Jackson. They assumed the payment of part of the purchase money going to DeCau, and the price Smith agreed to pay DeCau, was a circumstance, though a very slight one, bearing upon the honesty of his bargain with Comstock and Jackson, and we cannot regard its admission in reply as erroneous.

The claimant's husband was allowed to testify, under objection, as to what was said by the men engaged in making one of the wells, about the products brought up, and what they indicated. We think the objection to this inquiry was not well taken.

It was certainly competent for Smith to show that he was unaware of the untruthfulness of the representations imputed to him, and that he had grounds for believing them to be correct, and the statements made to him by those engaged in making the well, and who were experienced in such matters, had some bearing upon his knowledge of the truth or falsity of the alleged representations.

The same is true of the evidence of Smith as to his inquiries respecting the productiveness and quality of the DeCau well, and the representations made to him when he

bought. In cases of this kind, when the question is as to the relevancy of evidence in reply, the point is not whether the evidence offered is the most convincing or persuasive, but whether it tends to cut down, limit, explain, or obviate the defense in any part of it, or to illustrate some legitimate answer to the defense. In order to be relevant, it is not requisite that the testimony should be essential. It may be cumulative, it may be supererogatory, and still be relevant.

Having noticed those points which the counsel for plaintiff in error deemed of sufficient importance to be touched upon, on the argument, and having considered the remaining allegations of error; we are of opinion, that the record discloses no error of which the estate may rightly complain, and that the judgment of the Circuit Court ought to be affirmed with costs.

CAMPBELL, CH. J. and COOLEY, J. concurred.

CHRISTIANCY, J.

I concur fully in the opinion of my brother Graves, except so far as relates to the testimony which the plaintiff below was allowed to give against defendant's objections, to show what the well was represented to her to produce at the time she purchased from DeCau, what it had produced when previously owned by DeCau, and what she paid when she purchased it.

The defendant defended on the ground that his intestate had been induced to make the purchase, and to give the mortgage (upon which the action was brought), by the false and fraudulent representations of the plaintiff's agent, (her husband), that the well was a five-barrel well, and was then producing five barrels of oil per day, when in fact it did not produce over about one-fourth of that quantity.

The evidence tended to show that such was the repre-

sentation of her agent, who was at the place in charge of the well, and well acquainted with its real production; that this representation was a chief inducement to the intestate to make the purchase, and that he did make the purchase, relying upon its truth.

The evidence also tended to show that the representation was false, that the well did not produce more than one-fourth the amount respresented, and that her agent knew it.

It was, I think, no answer to such a defense, and did not tend to answer it, to show that the well had, at some former period, when owned by DeCau, produced this amount, nor to show what the plaintiff below had given for it when she purchased it, nor what it had been represented to her to produce when she purchased. If she had been defrauded by DeCau, it was no justification or excuse for her to defraud the deceased by the like or any other means, in selling to him.

All such evidence was, it seems to me, wholly inadmissible, and calculated to mislead the jury, to the prejudice of the defendant. On this ground alone I think the judgment should be reversed and a new trial awarded.