## FURNESS, WITHY & CO., Limited, v. ROTHE et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1923.)

No. 2044.

1. **Bills and notes ⬚26—"Re-exchange" defined.**

   "Re-exchange" is the expense incurred by a bill being dishonored in a foreign country, in which it was payable, and returned to the country in which it was made or indorsed, and there taken up, and the amount of it depends on the course of exchange between the two countries.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Re-exchange.]

2. **Bills and notes ⬚26—Drawer of bill liable for re-exchange.**

   The drawer of a bill is liable for the re-exchange occasioned by the drawee's refusal to accept, though the bill be returned through many hands.

3. **Bills and notes ⬚26—Re-exchange relates to time when bill should be paid.**

   Re-exchange, for which drawer is liable, relates to the time when a bill ought to be paid, and not when it ought to be accepted.

4. **Bills and notes ⬚533—Payee may hold bill until maturity, although protested, and recover damages for nonpayment.**

   The payee of a bill had the right to hold it, although protested for non-acceptance, and present it for payment at maturity, and recover damages for nonpayment.

5. **Bills and notes ⬚66—Drawer, making draft on himself, accepts.**

   Where the drawer makes a draft on himself, or authorizes another to draw on him, that is a virtual acceptance, and he is liable as drawee without formal acceptance.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

Action by Furness, Withy & Co., Limited, against J. Rothe, master, and another. From a judgment, plaintiff appeals, and defendants cross-appeal. Modified.

Braden Vandeventer, of Norfolk, Va. (Hughes, Vandeventer & Eggleston, of Norfolk, Va., on the brief), for appellant and cross-appellee.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellees and cross-appellants.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The master of a vessel draws a bill of exchange in this country, for the purchase of bunker coal, on the vessel's owner in Norway, payable in kroner 30 days after sight. The bill is protested for refusal to accept. The holder retains the bill and presents it for payment upon maturity. The bill is protested for non-

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

payment 30 days afterwards. If the draft was authorized, is the owner liable for re-exchange at the current rate on the day of dishonor by nonacceptance, or at the current rate 30 days thereafter, when payment was due and refused?

The Norwegian steamship Glittertind arrived in Hampton Roads in November, 1920. The master found it necessary to purchase bunker coal for her voyage to Argentine. Furness, Withy & Co., a corporation, furnished the coal, the bill, with the trimming charges, amounting to $11,975.58. Expecting to leave before the exact amount of the bill could be made up, the master signed a blank draft and delivered it without instructions to Furness, Withy & Co. to be filled out. Furness, Withy & Co. completed the draft by writing in the date, Kjeld Stubs Dmpsk Akties, Christiana, Norway, the owner of the vessel, as drawee, 30 days after sight as time of payment, and the amount, 90,-041.95 kroner, the equivalent of $11,975.58, the price of the coal at the rate of exchange then current.

The draft was deposited in the Schmelz National Bank of Newport News, and $11,975.58 was credited to the account of Furness, Withy & Co. The Schmelz National Bank indorsed the draft to Chase National Bank for collection, and received a like credit from that bank. The Chase National Bank forwarded the draft to its correspondent in Christiana and received the same credit in dollars at that bank. On or about December 28, 1920, the draft was presented to Kjeld Stubs Dmpsk Akties and was protested for nonacceptance. The defendant's reason for nonacceptance was that the purchase price of the coal bought was 11,975.58 American dollars, that the draft should have been drawn in dollars, and that the owner was not bound to pay the larger value, due to the rise in exchange, now represented by 90,041.95 kroner.

The Chase National Bank allowed the draft to remain in the Christiana Bank in the hope of settlement. Finally, 30 days after it was first presented for acceptance, the draft was presented for payment, and upon refusal was duly protested. From the date of the draft until the day of protest for nonacceptance the krone had risen in the exchange market from 13.30 cents to 15.60 cents, and on January 28, the date of maturity, to 18.95 cents. The Chase National Bank did not, however, close out the transaction until February 24, the day it received the draft from Norway, and then the krone had fallen to 17.49 cents. On that day it charged the Schmelz National Bank with the value of 90,041.95 kroner in dollars at the rate of .1749, protest fees, and interest, amounting in the whole to $16,082.82.

The Chase National Bank took the draft for collection, and not as a purchaser, and credited the Schmelz National Bank with only $11,-975.85. Therefore, on dishonor of the draft, it would have had no demand against the Schmeltz National Bank or Furness, Withy & Co. beyond that sum, but for the fact that when it received the draft, to maintain its value and prevent loss to itself or its customers from variations in the exchange value of kroner it sold kroner in the exchange market to the amount of the draft. Thus by the rise in exchange it lost on its sale of kroner the same amount that the value of the draft was increased by the rise. For this reason, when the draft was re-

turned unpaid, it charged the Schmeltz National Bank with the increased value of the draft to offset its loss on the protecting sale of kroner. On this point, however, there is no dispute between the two banks and the plaintiff, and we treat the case as if the draft taken by plaintiff had not been handled by the banks, but retained by the plaintiff and presented by it for acceptance and payment.

Question was made as to the validity of the draft. The master, of course, had the right to buy the necessary coal on the credit of the ship. The testimony is preponderating that it was customary under the conditions here shown, where the purchase was made from a concern of established standing, for the master to sign a blank draft to be filled out by the seller of the coal on the owner in the currency of his country for an amount equivalent to the purchase price in the currency of the country of the seller, and that in this instance there was no contrary instruction given by the master. There is therefore no ground to reverse the finding of the trial judge that the draft was good, and that the owner in Norway was bound to accept and pay in kroner according to its terms. It follows that, upon the owner's refusal to honor the draft, it was liable to the payee for re-exchange.

[1-3] The dispute is whether this liability is for re-exchange at the rate of exchange current on December 28, 1921, when acceptance was refused, or on January 28, when payment was due and was refused. The District Judge held the liability to be for re-exchange at the date of protest for non-acceptance.

The following definition of re-exchange is given in Byles on Bills:

"Re-exchange is the expense incurred by the bill being dishonored in a foreign country, in which it was payable, and returned to the country in which it was made or indorsed, and there taken up. The amount of it depends on the course of exchange between the two countries. The nature of the transaction is this: A merchant in London draws on his debtor in Lisbon, a bill in favor of A., for so much in the currency of Portugal, for which he receives of A. its corresponding value at the time, in English currency. Sometimes a bill for that amount, in Portuguese currency, can be purchased in London for less; sometimes it will fetch more English money, according to the course of exchange. Suppose the rate of exchange to fall when the bill becomes due; that is, suppose it requires in London more English money to purchase a bill on Lisbon for the same sum, and that, in Lisbon, to replace it, a larger bill must be drawn on London. A., the holder, has a right to the payment of that sum in Portuguese currency in Lisbon. The bill is dishonored. He, the holder, is therefore entitled to recover of the drawer, not only the value which he formerly 'gave for the bill, but as much as he must draw a bill for in Lisbon, on London, in order to replace, at the time and on the spot, when and where the bill should have been paid, the sum he was entitled to receive. The drawer of a bill is liable for the re-exchange, though the bill be returned through ever so many hands." Byles on Bills, p. 462.

See Daniel on Negotiable Instruments, § 1445; Story on Bills, 400; Bank of United States v. United States, 2 How. 711, 734, 11 L. Ed. 439; Pavenstedt v. New York Life Insurance Co., 203 N. Y. 91, 96 N. E. 104, Ann. Cas. 1913A, 805; Simonoff v. Granite City Nat. Bank, 279 Ill. 248, 116 N. E. 636.

By the definition it will be observed re-exchange relates to the time when the bill ought to be paid, not when it ought to be accepted.

[4] The basis of re-exchange is indemnity to the holder of the bill

for the loss he sustains by the failure of the drawee to pay him the amount at the time and place and in the money called for in the bill. It is not founded on failure to accept, but on failure to pay. If the bill is accepted, the payee receives nothing; but, when it is paid, he receives money of the kind and amount called for. Hence it is illogical to fix the date of presentment for acceptance as the date to compute re-exchange. When the bill matured and payment was due, the holder was entitled to his 90,041.95 kroner, and hence, when the drawee refused to pay at maturity, the holder was entitled to have a good bill payable in the United States for the amount in dollars that the 90,041.95 kroner were worth on the maturity. Some of the cases do refer to re-exchange as due on the date of dishonor, and dishonor includes refusal to accept; but, as we have tried to show, the dishonor applicable to a claim for re-exchange is the dishonor of refusing payment. It is true that the holder of a bill may sue the maker on protest for nonacceptance. Watson v. Tarpley, 18 How. 517, 15 L. Ed. 509. Even in that case the damages would be computed as of the future day of payment, not on the day of repudiation by failure to accept. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Roper v. Johnson, 23 Eng. Rul. Cas. 545; Brooke v. Laurens Milling Co., 78 S. C. 200, 206, 58 S. E. 806, 125 Am. St. Rep. 780. The payee had the right to hold the bill although protested for nonacceptance and present it for payment at maturity, and recover damages for nonpayment.

[5] There is another view which strengthens our conclusion. When the drawer makes a draft on himself, or authorizes another to draw on him, that is a virtual acceptance, and he is liable as drawee without formal acceptance. 2 Daniel on Negotiable Instruments, 458; 8 Corpus Juris, 316; Coolidge v. Payson, 2 Wheat. 66, 4 L. Ed. 185; Hooe v. Oxley, 1 Wash. (Va.) 19, 1 Am. Dec. 425; Pavenstedt v. New York Life Insurance Co., 203 N. Y. 91, 96 N. E. 104, Ann. Cas. 1913A, 805. This draft therefore needed no acceptance, and the only effect of presentment was to fix the day of maturity 30 days after sight.

The draft having been made by an agent on his principal, the principal was liable to pay 30 days after presentment with or without acceptance by him. The amount he was bound to pay on that day was 90,041.95 kroner. Upon his refusal to pay he became liable on that day to the holder of the draft for the amount of exchange payable in America which 90,041.95 kroner would buy in American dollars. This amounted to $17,062.95.

The Chase National Bank, however, waited to charge back the dishonored draft until its return on February 24, 1921. In the meantime exchange had declined so that the 90,041.95 kroner were worth $15,-287.24. The plaintiff being content with this re-exchange, the judgment will be modified accordingly, and a decree entered for that sum and interest and fees, less the payment of $11,975.58 made by defendant.

Modified.