WACHOVIA BANK & TRUST COMPANY v. AMERICAN BANKERS IN-SURANCE COMPANY OF FLORIDA.

(Filed 14 January, 1966.)

**1. Bills and Notes § 10—**

Ordinarily, a draft must be accepted by the drawee in order to bind him, but where the drawee is also the drawer, or the draft is issued by the drawee's duly authorized agent, the draft becomes in effect a promissory note, and acceptance is not required.

**2. Same—**

In this case it was stipulated that the general agent of defendant insurer was authorized to draw the draft in question and that he issued its draft payable to the insured and insured's mortgagee, and that plaintiff bank cashed the draft upon their endorsement. *Held:* Acceptance was not required, and insurer is liable to the bank on the draft.

APPEAL by defendant from *Mintz, J.,* May 1965 Civil Session of WAYNE.

This is a civil action instituted by plaintiff to recover on a draft given to Walter E. Bell and Federal Credit Union and cashed for them by plaintiff bank. The case was tried on a stipulation of facts,

the substance of which is as follows:

On 24 November 1959, defendant issued its fire insurance policy No. 11707 to Walter E. Bell and his mortgagee, Federal Credit Union, covering his mobile home as described in said policy. On 15 November 1963, while the coverage on said insurance policy was in full force and effect, Walter E. Bell suffered a fire loss to the property described in said policy. On 11 December 1963, defendant, through its agent, J. D. Murphy of Cincinnati, Ohio, who had authority to draw the drafts referred to herein, issued its draft to Walter E. Bell and Federal Credit Union in the amount of $2,400, representing the fire loss on the mobile home, and said draft was endorsed by them and cashed by plaintiff Wachovia Bank & Trust Company. On 9 December 1963, two days before the issuance of said draft and after due investigation of the fire, defendant's adjuster or agent prepared a proof of loss for certain personal property for the said Walter E. Bell, as shown on "Exhibit B," and on 20 December 1963, J. D. Murphy, general agent of defendant, issued another draft to Walter E. Bell and Federal Credit Union in the amount of $884.00, for the purpose of satisfying the claim evidenced by the proof of loss of the personal property of the insured destroyed in the aforesaid fire. Said draft was also duly endorsed by Walter E. Bell and Federal Credit Union and cashed for them by plaintiff. Payment of the latter draft was stopped by defendant and it has refused to pay said draft. Suit for recovery thereon was then instituted by plaintiff.

A jury trial was waived and the trial judge empowered to hear this cause upon the pleadings and the stipulations of facts. The court below adopted as its findings of fact the stipulation of facts and concluded that the plaintiff is entitled to recover and entered judgment accordingly. The defendant appeals, assigning error.

*Taylor, Allen & Warren for plaintiff appellee.*
*Dees, Dees & Smith for defendant appellant.*

DENNY, C.J. The only assignment of error and the only exception entered by appellant is to the entry of the judgment appearing in the record, which judgment it contends is erroneous because of error made by the court below in interpreting the effect of the facts as set forth in the stipulation of facts.

The plaintiff and the defendant agree that the draft involved herein was non-negotiable. It was issued in Cincinnati, Ohio, on 20 December 1963, and contains the following language: "Pay only to Walter E. Bell and Federal Credit Union—Eight Hundred Eighty-Four and 00/100 — Dollars in full settlement, satisfaction, com-

promise and discharge of all claims and demands for loss and damage as herein described, to property covered in the policy named below, which is hereby reduced by said amount subject to policy provisions." The draft recites upon its face that it is "Collectible through The First National Bank of Miami, Miami, Florida, upon acceptance by American Bankers Insurance Co. of Florida."

Defendant, in its further answer and defense, alleged that the policy issued to Walter E. Bell "did not cover any personal effects that said insured had in said trailer."

It appears from the pleadings and the stipulation of facts that the draft in the sum of $884.00 was issued to cover loss of certain personal property burned in the mobile home of Walter E. Bell on 15 November 1963, and that the proof of loss filed with defendant was prepared by an adjuster or other agent of defendant.

In light of the stipulation of facts, the findings of the court below and the conclusion reached, we think the determinative question involved herein is whether or not the draft, having been drawn by a duly authorized agent of defendant, to cover a proof of loss prepared by defendant's authorized adjuster or other agent, was subject to acceptance before payment could be demanded.

In the case of *Cable & Wireless v. Yokohama Specie Bank,* 79 N.Y.S. 2d 597, defendant bank, a Japanese corporation, had an agency in New York. It drew a bill of exchange whereby it directed its New York agency to pay to the order of the plaintiff on demand. Before the draft was presented or any demand made for payment, the Superintendent of Banks of the State of New York took possession of the business and property of the Yokohama Specie Bank in New York for the purpose of liquidating the same. Plaintiff filed its proof of claim with the Superintendent. The Superintendent rejected the claim and the action was commenced. The Court said:

> "That a draft drawn by one person upon himself or itself is in effect a promissory note or an accepted bill, accepted by the very act of issuing it, and that presentment and acceptance are not necessary to make the draft a liability of the drawer to the payee or holder, has been decided so many times and has been so widely recognized, both before and since the enactment of the Negotiable Instruments Law, that I would not have thought that any one could or would deny or question it. *Fairchild v. Ogdensburg, Clayton & Rome R. R. Co.,* 15 N.Y. 337, 69 Am. Dec. 606; *Pavenstedt v. New York Life Insurance Co.,* 203 N.Y. 91, 95, 96, 96 N.E. 104, 105, 106, Ann. Cas. 1913A, 805; *Shaw v. Stone,* 1 Cush. 228, 256, 55 Mass. 228, 256; *First National Bank & Trust Co. of Lexington, Ky. v. First National*

*Bank in Hazard's Receiver,* 260 Ky. 581, 584, 585, 86 S.W. 2d 325; *Wataugh County Bank v. McQueen,* 130 Tenn. 382, 385, 170 S.W. 1025; *Walker v. Sellers,* 201 Ala. 189, 77 So. 715; *First National Bank of Huttig v. Rhode Island Ins. Co.,* 184 Ark. 812, 815, 816, 43 S.W. 2d 535; *Clemens v. E. H. Stanton Co.,* 61 Wash. 419, 112 P. 494; *First Nat. Bank of Artesia v. Home Ins. Co. of New York,* 16 N.M. 66, 70, 113 P. 815; *Drinkall v. Movius State Bank,* 11 N.D. 10, 88 N.W. 724, 57 L.R.A. 341, 95 Am. St. Rep. 693; *Causey v. Eiland,* 175 Ark. 929, 1 S.W. 2d 1008, 56 A.L.R. 529, 532, note; *Kramer v. Mid-City Trust & Savings Bank,* 225 Ill. App. 575, 578, 579; *Alex Woldert Co. v. Citizens' Bank of Ft. Valley, Ga.,* Tex. Civ. App., 234 S.W. 124; *Furness, Withy & Co. v. Rothe,* 4 Cir., 286 F. 870, 873, 27 A.L.R. 1185; *Pennsylvania R. Co. v. Brown,* 6 Cir., 111 F. 2d 983; 8 Am. Juris. 514, Bills and Notes, § 871; Neg. Inst. Law, Sec. 214."

In *First National Bank of Huttig v. Rhode Island Ins. Co.,* 184 Ark. 812, 43 S.W. 2d 535, the president of defendant insurance company drew a draft as follows:

" 'Upon acceptance, Pay to the order of Spencer Mercantile Company, D. R. Spencer, Sole Owner, First National Bank of Huttig, Ark. Four Hundred Thirty Nine and 03 Dollars ($439.03) in full satisfaction and discharge of all claims for loss and damage by fire to property insured under Policy No. 155472, issued at El Dorado, Ark. Agency of said Company and occurring on the 9th day of May, 1930. In consideration of said payment, said policy is hereby cancelled and surrendered.

'To Rhode Island Insurance Company,
'31 Canal St.,
'Providence, R. I.
'E. G. Peiper, President.' "

The Court said:

"In the first place, under our Negotiable Instruments Act, section 7896 of Crawford & Moses' Digest, where, in a bill of exchange, the drawer and the drawee are the same person, the holder may treat the instrument at his election either as a bill of exchange or as a promissory note. This was the law prior to the passage of the act in question. A bill of exchange drawn by the maker upon himself is in legal effect a promissory note, and cannot be countermanded. Where a bill of exchange is drawn by a corporation upon itself, the instrument may be treated as an accepted bill or as a promissory note at the elec-

tion of the holder. (Citations omitted.)

"In the present case, the instrument which is the basis of the suit was in form a bill of exchange. It was drawn by the corporation, Rhode Island Insurance Company, under the signature of its president upon itself. In other words, it was a bill of exchange drawn by the corporation through its proper officer upon itself, and was not therefore subject to countermand.

"It is claimed, however, that it was conditional because of the words 'upon acceptance' in it. Under our statute, and under the principles of law above announced, these words had no legal effect on the instrument. They were in the instrument when it was signed by the president of the corporation, and the very act of drawing the bill is deemed an acceptance of it, and the holder may treat it as an accepted bill of exchange or as a promissory note. * * *

"Here the draft was signed by the president of the company, who had authority to sign it; and the contract became binding and complete when he did sign it because he had authority to make the contract, and no approval or ratification of his act was necessary."

In the case of *Creditors' Claim & Adjustment Co. v. Larson,* 171 Wash. 575, 18 P. 2d 844, in discussing a draft similar in form to that set out in the case of *First National Bank of Huttig v. Rhode Island Ins. Co., supra,* the draft contained the words "upon acceptance" and was signed "Harry Howes, General Adjuster." In discussing the legal principles involved, the Court said: "Our present problem is then reduced to this, Did the drawing of the draft here in question, signed by Harry Howes as general adjuster, constitute, in legal effect, a draft drawn by the insurance company upon itself?" The Court held that it did, and directed that judgment be entered against the insurance company, stating:

"We do not lose sight of the apparently wide scope of the general agency of Peiper, suggested by the word 'president' following his signed name to the draft, and that the agency of the general adjuster Howes who signed the draft here in question is apparently of a more limited character. But the proof in this case shows that Howes was at the time of issuing this draft the general adjuster of the insurance company as a salaried agent, and that he had 'charge of adjusting all of garnishee defendant's losses on the Pacific Coast,' warranting the conclusion that he had the authority to finally bind the insurance company for the payment of losses under its policies, and issue or approve the issuing of drafts upon the insurance com-

pany in final settlement thereof. This, we think, evidences as wide and complete an agency power in adjusting and finally fixing loss obligations upon the insurance company as is suggested by the signature 'E. G. Peiper, president,' in the issuance of the draft involved in the *Rhode Island Insurance Company* Case. The decision of the Supreme Court of New Mexico in *First Nat. Bank v. Insurance Co.*, 16 N.M. 66, 113 P. 815, lends support to this view. See, also, 8 C.J. 297, and authorities there cited."

Ordinarily, a bill of exchange must be accepted by the drawee named therein. However, there is an exception to this rule stated in 10 C.J.S., Bills and Notes, § 171, page 646, as follows:

"Acceptance is not necessary where no drawee is named in the bill; nor is it necessary to make the drawee liable where the drawee is himself the drawer—such bill being in effect the note of the drawer. The same effect is given a draft by an agent on his principal by authority of the principal, but such is not true of a draft drawn by an agent on his principal without authority, or a draft drawn on a principal by an agent who exceeds an express written authority."

In *Berenson v. London & Lancashire Fire Ins. Co.*, 201 Mass. 172, 87 N.E. 687, relied upon by the defendant, a fire had damaged property insured by defendant insurance company. The loss had been tentatively adjusted between the insured and a special agent of the insurance company, whose authority to make payment or sign an instrument fixing its liability was limited to the extent of requiring approval or ratification by the Hartford Agency of defendant insurance company. The Court held that since the special agent's power was limited and subject to the approval of the defendant company, the company was within its right in refusing to accept the draft.

In the instant case, it was stipulated that J. D. Murphy was the general agent of the defendant, with authority to draw the draft involved herein.

It will be noted that the drafts involved in each of the cases discussed herein were negotiable instruments. Even so, there is nothing in the opinions to indicate that recovery was denied or allowed on the theory of being or not being a holder in due course. Each case turned upon the authority or lack of authority of the maker of the respective drafts.

If there was a mistake in issuing the draft involved in the instant case, there is certainly no evidence of bad faith on the part

of the insured or of the plaintiff. The proof of claim was prepared and caused to be executed by an agent or adjuster of defendant company. Moreover, the defendant company will be charged with knowledge of the contents of its own policy.

The judgment of the court below will be upheld.

Affirmed.