**ALEX WOLDERT CO. v. CITIZENS' BANK OF FT. VALLEY, GA., et al. (No. 2429.)**

(Court of Civil Appeals of Texas. Texarkana. July 8, 1921. Rehearing Denied Oct. 13, 1921.)

1. **Principal and agent** ⟜132(1)—**Agent's authorized good-faith acceptance of goods purchased held binding on principal.**

Where an agent had authority to purchase and accept peaches, and to pay for them by draft on his principal, his acceptance, in the absence of fraud, was binding on the principal.

2. **Principal and agent** ⟜145(2)—**Statute limiting liability to parties named on paper inapplicable to nonnegotiable contracts.**

Acts 1919, c. 123, § 18, providing that liability upon negotiable instruments is limited to the parties named therein, has no application to nonnegotiable contracts.

3. **Principal and agent** ⟜145(2)—**Limitation of liability to parties inapplicable where liability not dependent on written promise.**

Acts 1919, c. 123, § 18, providing that liability upon negotiable instruments is limited to the parties named therein, is not controlling where liability does not depend upon a written promise to pay.

4. **Principal and agent** ⟜92(1)—**Principal and agent identical when latter acts within authority.**

In law the principal and the agent are the same person when the latter is acting within the scope of his authority.

5. **Bills and notes** ⟜3—**Agent's draft on principal for latter's debt equivalent to principal's draft on himself.**

A draft drawn by the agent as such upon his principal for the payment of the principal's debt is legally the equivalent of a draft by the principal upon himself, and under Negotiable Instruments Law, § 130, the holder may treat it either as a bill or note.

6. **Evidence** ⟜423(6)—**Parol evidence admissible to show that draft was by agent on principal.**

Where a draft indicates that the drawee was a fruit dealer and that the drawer was its purchasing agent, and that it was an order of the agent on the principal for the purchase price of commodities, in a controversy between the original payee and drawee, parol evidence may be resorted to, to show the interest of the parties and their relations.

7. **Banks and banking** ⟜260(4)—**Cashier not authorized to guarantee payment of future drafts on customer.**

In view of U. S. Comp. St. 1916, § 9661, the cashier of a national bank *held* not authorized gratuitously to guarantee the payment of drafts thereafter to be drawn on one of its customers.

Appeal from District Court, Smith County; J. R. Warren, Judge.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by the Citizens' Bank of Ft. Valley, Ga., against the Alex Woldert Company and the Citizens' National Bank of Tyler. From a judgment discharging the Citizens' National Bank of Tyler, and in favor of plaintiff against the Alex Woldert Company, that company and also plaintiff appeal. Affirmed.

Butler, Price & Maynor, of Tyler, for appellant Alex Woldert Co.

Simpson, Lasseter & Gentry, of Tyler, for appellant Citizens' Bank of Ft. Valley.

Marsh & McIlwaine, of Tyler, for appellee.

HODGES, J. The Alex Woldert Company is a private corporation domiciled at Tyler, Tex., and was, on the dates hereinafter mentioned, engaged in buying and selling fruit. In the summer of 1920 it sent an agent, A. R. Willett, to Ft. Valley, Ga., for the purpose of buying peaches for shipment. Acting for the Alex Woldert Company, Willett, on July 9, 1920, entered into a written contract with Duke Bros. for the purchase of 40 carloads of peaches at stated prices to be paid for when delivered and accepted f. o. b. the cars at Ft. Valley. It was stipulated that each party to the contract should deposit with the Citizens' Bank of Ft. Valley $8,000 as a guaranty of the faithful performance of the contract according to its terms. Shipment was to begin on July 12 and continue as rapidly as weather conditions would permit. This contract was signed, "Alex Woldert Company, by Willett." Willett applied to the Citizens' Bank of Ft. Valley for a loan of the funds needed to make the deposit of $8,000 referred to. His connection with the Alex Woldert Company was fully explained, and all parties understood that he was acting as the agent of that company in that as well as the subsequent transactions which followed. Willett was to repay the loan by drawing a draft on his principal, to be collected through the Citizens' National Bank of Tyler, Tex. Similar dealings had occurred between the Georgia bank and the Alex Woldert Company the year before. A telegram was sent by the Georgia bank to the Tyler bank inquiring if the latter would pay on presentation a draft for $8,000 drawn by Willett on the Alex Woldert Company. Upon the receipt of an affirmative answer by telegraph, Willett drew a draft for $8,000 on his principal. The $8,000 deposit called for in the contract with Duke Bros. was then properly credited in accordance with the terms of the written agreement. Willett also made similar arrangements for the purpose of securing the funds needed to pay for the peaches as they were delivered. Before agreeing to cash other drafts, the Georgia bank sent another message to the Tyler bank inquiring if it would pay on presentation drafts drawn by Willett on the Alex Woldert Company for 40 carloads of peaches. An affirmative answer was promptly received. Both messages from the Tyler bank to the Georgia bank were sent after consultation with and at the direction of the managing officer of the Alex Woldert Company, who was at the time fully informed of the existence and terms of the written contract with Duke Bros. for the purchase of the peaches. No further communications passed between the two banks till July 17, when the Georgia bank received from the Tyler bank a telegraphic message saying that payment of the draft drawn for the first shipment of peaches had been refused by Woldert on account of the condition of the fruit. The message was received on Saturday too late for reply that day. On Monday following the Georgia bank sent the following:

"Received your wire seventeenth too late for attention must be some mistake regarding payment draft please present again sure will be paid."

Other similar drafts were drawn by Willett and cashed by the Georgia bank on different dates, the last occurring on July 24. The total amount advanced to Willett, for the benefit of the Alex Woldert Company, including the $8,000, was $26,619.63. None of those drafts was ever paid, and this suit was instituted by the Georgia bank for the purpose of enforcing collection. The Tyler bank was joined as a party defendant and its liability urged because of the messages sent by it stating that the drafts would be paid.

The Alex Woldert Company, treating the pleadings of the plaintiff as a suit on the drafts, excepted to the amended original petition upon the ground that no acceptance of the drafts by that defendant had been alleged, and for that reason no liability was shown. The same defense was also raised by a special plea. The proposition relied on being that in a suit upon a negotiable instrument no one except the parties to that instrument can be held liable for its payment. The Alex Woldert Company also specially pleaded a failure of consideration because of the defective condition of the fruit. That plea was stricken out on demurrer because it did not set up the facts necessary to make the Georgia bank responsible for the defective condition of the fruit.

The Tyler bank answered, in substance, that the legal effect of the messages sent by it to the Georgia bank was to guarantee the payment of the drafts to be thereafter drawn on the Alex Woldert Company, and that the cashier of the defendant bank had no authority to make such a contract. In a trial below that defense was sustained and the Tyler bank was discharged; but upon a peremptory instruction a verdict was returned in favor of the Georgia bank against the Alex Woldert Company for the full amount

sued for. From that judgment the Alex Woldert Company has appealed, and the Georgia bank also appeals from the judgment denying a recovery against the Tyler bank.

[1] The material facts in this case are undisputed, and the issues present only questions of law. It is conceded that Willett was the agent of Alex Woldert Company and had full authority to make all the contracts entered into by him for the purchase of the 40 carloads of peaches. His agency was known to the Georgia bank and all the parties with whom he dealt. The evidence shows that Willett was to receive and pay for the peaches as they were delivered on the cars at Ft. Valley. There is no intimation that he did not fully inspect and accept them and thereafter in good faith draw the drafts for their payment. As the representative of the Alex Woldert Company, he had the authority to do this, and in the absence of fraud on his part his acceptance was binding upon his principal. In the plea of failure of consideration there is no averment that the agent acted corruptly, or that there was any fraud or collusion between him and the bank, or with the sellers of the fruit. We think the court properly sustained the demurrer to that plea.

[2-5] As the record stands, we have a transaction in which the plaintiff bank advanced money to Alex Woldert Company's agent, to pay for peaches purchased by that agent for the benefit of his principal, and with the expectation that his principal would pay the drafts drawn on it by its agent under the terms of an agreement which it had expressly authorized. The contention of the appellant is that the agency of Willett being known to the Georgia bank at the time the drafts were drawn, the form adopted evidences, in law, an intention to extend credit to the agent personally, and not to the appellant, his principal. A number of cases are cited in support of the proposition that when an agent executes a negotiable instrument for the benefit of a known principal but to which he signs his own name, either with or without the suffix "agent," the agent alone is bound, and parol evidence is not admissible to show that credit was extended to the principal. Reference is also made to article 6001a18 of the Revised Civil Statutes, a part of the present Negotiable Instruments Law. That article provides, in substance, that liability upon negotiable instruments is limited to the parties named therein. That rule has been adopted to encourage and facilitate the exchange of negotiable commercial paper by protecting the holders from any terms or conditions not disclosed on the face of the instruments themselves. It has no application, however, to nonnegotiable contracts. Texas Land & Cattle Co. v. Carroll & Iler, 63 Tex. 50. For an equally good reason it should not control where the issue of liability does not depend upon a written promise to pay. Raymond v. Mann, 45 Tex. 301; Sessums v. Henry, 38 Tex. 41. Section 126 of the Negotiable Instruments Law (see Acts of 1919, c. 123) defines a "bill of exchange" in the usual form. Section 130 provides that where the drawer and the drawee are the same person, the holder may treat the instrument, at his option, either as a bill of exchange or as a promissory note. In law the principal and the agent are the same person when the latter is acting within the scope of his authority. A draft drawn by the agent as such upon his principal for the payment of the principal's debt is legally the equivalent of a draft by the principal upon himself. Raymond v. Mann, supra. We come, then, to the question: Were the drafts involved in this controversy drawn by Willett as the agent of the Alex Woldert Company, and with the intention of binding that company alone? If resort may be had to parol evidence, that fact is conclusively shown. It is equally as conclusively established that the appellee bank intended to and did extend credit to the Alex Woldert Company, and not to Willett. But it is argued that in determining the party to whom credit was given we are confined to the drafts alone. Undoubtedly that rule does apply in some instances, as where the instruments are plain and unambiguous and have passed into the hands of a third party. But where the instrument bears upon its face such evidences of agency on the part of the drawer, and of principal on the part of the drawee, as to create an uncertainty and suggest an inquiry concerning that relationship, a different rule has been applied by the courts. Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Burkhalter v. Perry et al., 127 Ga. 438, 56 S. E. 631, 119 Am. St. Rep. 344; Small v. Elliott, 12 S. D. 570, 82 N. W. 92, 76 Am. St. Rep. 630; Keidan v. Winegar, 95 Mich. 433, 54 N. W. 902, 20 L. R. A. 705; Traynham v. Jackson, 15 Tex. 170, 65 Am. Dec. 152; 2 Clark & Skyles on Agency, § 565; Mechem on Agency, §§ 436, 437; 3 Ruling Case Law, pp. 1084–1086. The rule is thus stated in the last of the above citations:

"While it is conceded that there is anything on the face of the paper which suggests a doubt as to the party bound, or the character in which any of the signers has acted in affixing his name, parol evidence is admissible between the original parties to establish the real intent, yet the view which obtained formerly with all courts, apparently, and still persists in some jurisdictions, deems instruments of the class herein considered not to show such an ambiguity as to warrant the introduction of extrinsic evidence. It is better in these cases, however, to hold that the signature is ambiguous, and hence subject to explanation by extrinsic evidence; and this is the modern view. Accord-

ing to sounder doctrine while, where one signs as agent of another, the prima facie presumption is that the words are merely descriptio personæ, and therefore that the one so signing is personally bound; yet it may be shown in an action between the original parties that it was not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, or who was well known by the payee to be the real party to be bound. Although the agent may have contracted in his own name, nevertheless, it is competent to show, by parole, the real facts, and that the contract was made on behalf of the principal, the agent not intending to assume any personal liability."

The following is admitted to be an exact copy of the first draft drawn:

Draft No.    Fort Valley, Ga., July 12, 1920.
File No. ......
Pecans
Peanuts    Alex Woldert Company    Fruits
Peas            Tyler, Texas              Produce
Pay to the order of Citizens' Bank of Fort Valley. $8.000.00
Eight Thousand and no-100 Dollars.
{ No Pro. }
{ 63–232 }
To Alex Woldert Company, Tyler. Texas.
Tyler. Texas [Signed] A. R. Willett, Buyer.
[Rubber Stamp:] Payment of this draft is guaranteed by [handwriting in ink] Citizens' National Bank.

[6] The proof showed that the words "Alex Woldert Company, Tyler, Texas," and the words "pecans, peanuts, peas, produce," were lithographed at the tip and on the margin of the draft. Except as to the amounts and dates, each of the other drafts was an exact copy of the above. The face of those instruments indicated that Alex Woldert Company, located at Tyler, Tex., was a dealer in the articles mentioned on the margin of the drafts, and that Willett was its buying agent. Practically each draft bore upon its face evidences which indicated that it was an order of the agent upon his principal for the purchase price of some commodity in which the principal was dealing. In a controversy between the original parties like the present those facts are sufficient to permit a resort to parol evidence for the purpose of showing the interest of the parties and their relations, if it does not as a matter of law require a holding that the draft was that of an agent upon his principal. See cases above cited.

But this suit cannot, in a legal sense, be treated as exclusively an action on the drafts. In the amended original petition the plaintiff pleaded all of the facts, as it might have done in an ordinary action of assumpsit based upon an implied promise of the principal to repay money advanced to the agent for the benefit of the principal. Clearly the plaintiff is entitled to recover upon

the actual transactions with the agent, unless it can be said as a matter of law that in taking the drafts it had elected to extend credit to the agent alone. Raymond v. Mann, supra. As we have seen, no such inference as that can be justified by this record. Had the Georgia bank taken Willett's promissory note, as was done in some of the cases relied on by the appellant, a different situation might have been presented; or had Willett given a draft on some one other than his principal, there would have been more reason for saying that credit had not been extended to the principal. But the form of the drafts used in this instance clearly indicated that payment was expected to come from Alex Woldert Company.

We are of the opinion that the record justified the peremptory instruction against the Alex Woldert Company, and that judgment will be affirmed.

[7] We are also of the opinion that the court properly instructed a verdict in favor of the Tyler bank. Its attitude in this transaction was that of a guarantor only. That such was the construction put upon its conduct is indicated by the memoranda written on each draft. The Tyler bank had no interest in this transaction, and its cashier had no authority to gratuitously guarantee the payment of drafts thereafter to be drawn on one of its customers. Section 9661, U. S. C. S. 1916, and cases cited in notes thereunder.