## PRESCOTT–PHŒNIX OIL & GAS CO. v. GILLILAND OIL CO. (No. 1940.)

(Court of Civil Appeals of Texas. Amarillo. April 5, 1922.)

**1. Corporations ☞673—Foreign corporation must prove at trial right to do business within the state.**

The requirement that a foreign corporation must prove it had a permit to do business within the state at the time the contract sued on was made, in order that the court might enter judgment in its favor, requires such proof to be made in the trial of the case.

**2. Action ☞71—Action incomplete until all issues are disposed of.**

A trial is incomplete until all the issues of law as well as fact have been determined and final judgment entered.

**3. Corporations ☞675—Where foreign corporation fails to prove permit, dismissal only judgment which abates for want of proper party plaintiff.**

In a suit by a foreign corporation which fails to prove it had a permit to do business within the state, the only judgment which can be entered is one of dismissal, which abates the suit for want of a proper party plaintiff shown by the evidence, but does not establish the invalidity of the contract sued on.

**4. Trial ☞351(2)—Court tries issue of plaintiff's right to sue, in absence of request to submit it to the jury.**

In view of Rev. St. art. 1985, the issue of a foreign corporation's right to maintain a suit is to be tried by the court in a case submitted to the jury on special issues, in the absence of a request by either party to have that issue submitted to the jury.

**5. Trial ☞71—Permitting foreign corporation to prove permit after special verdict held not objectionable.**

In a suit by a foreign corporation, submitted to the jury on special issues, the court could, after the verdict was received and the jury discharged, permit the plaintiff to offer in evidence its permit to do business within the state, where no objection for failure to offer such proof had previously been made and there had been no request to submit the issue of plaintiff's capacity to sue to the jury, and there was no showing that the admission of such evidence would deprive the defendant of any right or privilege.

**6. Appeal and error ☞1047(4)—Admitting permit to do business after special verdict not reversible without showing of injury.**

Since Rev. St. art. 1952, authorizing the court at any time before the argument is closed to permit either party to supply an omission in the testimony, is merely directory, a judgment *held* not to be reversed under Circuit Court of Appeals Rules 62A (149 S. W. x), because the court, after the special verdict of the jury had been received and jury discharged, permitted the plaintiff to introduce its permit to do business within the state.

**7. Contracts ☞28(3)—Evidence held to sustain finding letter relied on by defendant was not agreed to as a contract.**

Where plaintiff's agents testified that the letter written by defendant, which the latter claimed embodied the contract between the parties, was not written in their presence as testified to by defendant's agent, and was not received by them until after the oral contract had been made and the money paid thereon, the jury's special finding that the letter did not embody the contract between the parties was sustained by the evidence.

**8. Contracts ⚖⇒94(1)—Plaintiff held entitled to rescind for misrepresentation oil tank purchased was on the track.**

Where plaintiff purchased from defendant an oil tank which was represented as on the track at a designated point ready for erection, taking over defendant's contract with a contractor to erect the tank, and thereafter learned that the tank which had been on the track had been sold, with defendant's knowledge, before the contract was made, plaintiff was entitled to rescind the contract for the false representation, and to recover the amount paid.

**9. Contracts ⚖⇒253—Evidence held not to show release of defendant after discovery of fraud.**

Where plaintiff purchased from defendant an oil tank fraudulently represented to be then at a designated point, and took over defendant's contract with a contractor to erect the tank, evidence that, after learning the tank had been previously sold, plaintiff offered to abide by the contract if either the defendant or the contractor furnished another similar tank within a reasonable time *held* not to require finding that plaintiff agreed to release defendant after discovering the fraudulent representation.

**10. Contracts ⚖⇒270(2) — Party defrauded need act only with reasonable promptness.**

To entitle one to rescind for fraud he is only required to act with reasonable promptness after discovering the fraud, and a liberal extension of the rule is allowed where the delay has not been willful nor exercised for an improper purpose.

**11. Sales ⚖⇒51—Payment of draft after discovery of fraud not ratification, unless so intended.**

That plaintiff, after discovering fraudulent misrepresentation by the defendant as to the goods sold, paid the draft given for the purchase price and deposited by defendant in a bank because the draft was issued by a duly authorized officer of plaintiff corporation, and it desired to protect its credit by avoiding protest on its draft, does not establish ratification of the contract after discovery of the fraud, since the payment was not made with the intent to adopt the contract which is necessary to ratification.

**12. Sales ⚖⇒51—Ratification of sale held not shown by acceptance of draft.**

Where the drawer was vice president of the drawee corporation so as to be in effect the same person, which rendered acceptance by the drawee unnecessary under Uniform Negotiable Instrument Act, § 130 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—130) the delivery of the draft to the payee and payment by the bank before the drawer discovered the fraud in the sale contract in which the draft was given was in effect a payment of the draft before knowledge, so that the actual acceptance and payment thereafter had no probative force in establishing waiver or ratification of the contract.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by the Gilliland Oil Company against the Prescott-Phœnix Oil & Gas Company for rescission of a contract and recovery of amount paid thereon. Judgment for plaintiff, and defendant appeals. Affirmed.

Kay, Akin & Kenley, of Wichita Falls, for appellant.

Fischer & Fischer, of Wichita Falls, and J. H. Maxey and Christy Russell, both of Tulsa, Okl., for appellee.

HUFF, C. J. This is a suit by the Gilliland Oil Company, a Delaware corporation, against the Prescott-Phœnix Oil & Gas Company, also a foreign corporation, for a rescission of a verbal contract, entered into between the parties on September 13, 1919, and to recover $16,000, and interest thereon, paid by appellee to appellant, in pursuance to the terms of the contract. The petition alleged substantially that on September 13, 1919, appellant, through its general manager, Lloyd Sigler, represented to the agents of appellee that appellant had a contract with one H. L. Hagerman, for the delivery and erection of a 55,000 barrel steel storage tank, and that in pursuance of said contract the tank had already arrived and was on board railroad cars at Electra, Tex., ready for immediate erection; that the bills of lading for said tank had arrived and had been taken up by appellant and were in its possession at its general office in Prescott, Ariz.; that the contract for the erection of the tank with Hagerman was also at its general office with bills of lading; that appellant would deliver the bills of lading for the tank and assign the erection contract that it had with Hagerman for the erection of the tank to appellee for the sum of $16,000, appellee to pay to Hagerman the sum of $8,000 for the erection of the tank when such erection was completed; that the said Lloyd Sigler would immediately wire his principal, the appellant, at Prescott, Ariz., to forward the bills of lading, together with the erection contract, to appellee at Wichita Falls, Tex.; that appellee relying upon the statements and representations of Sigler, and believing them to be true, paid appellant the sum of $16,000; that the statements and representations of Sigler were false and untrue, in that the appellant nor Hagerman, the person through whom it represented it was purchasing the tank, did not have a 55,000-barrel steel storage tank on board railroad cars at Electra, nor at any other point in the vicinity of Wichita Falls, Tex.; neither did it have the bills of lading for such tanks to be delivered at Electra, Tex., or at any other point in the vicinity of Wichita Falls; that appellant, about a week after the receipt of said $16,000 from appellee, mailed to appellee an erection contract that it had with Hagerman, but without the bills

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of lading for the tank that it represented it had. Appellee, upon discovery of the fraud that had been perpetrated upon it, offered to return the erection contract that had been forwarded to it through the mails, and demanded the return of the $16,000 paid defendant. The appellant answered by general denial and special defenses which will be noticed later. The case was submitted to the jury upon special issues. The issues answered by the jury were in favor of appellee, and such of them as shall be necessary will be noticed later. Upon these issues the court entered judgment in favor of the appellee on his plea for rescission of the contract and the recovery of the amount sued for, with interest.

The appellants' first four propositions relate to the action of the trial court in permitting the appellee to introduce the certificate of the Secretary of State, showing the appellee had filed its articles of incorporation in that office, permitting it to do business in the state of Texas, as a foreign corporation. This testimony was offered after the case had been submitted to the jury and the jury had returned their answers, and upon motion of the respective parties before the court for judgment. The appellee is a foreign corporation, and it was alleged was doing business within the state of Texas, with authority from the state to transact such business. After the conclusion of the testimony in the trial court the appellant, defendant below, presented to the court a motion, requesting the court to dismiss plaintiff's cause of action and proceed no further, on the ground that the evidence showed that the court was without jurisdiction to further hear the same, and on the 20th of December, 1920, after the return of the verdict of the jury, the appellant filed its motion, requesting that the court enter a judgment dismissing the cause. Until after the return of the verdict the appellant did not specifically call the court's attention to the fact that appellee had failed to introduce its certificate from the Secretary of State of its permit to do business in the state of Texas. The appellee, before the court entered judgment, requested the court for permission to then introduce into the record a certified copy from the Secretary of State of its permit to do business in the state of Texas. The court granted the permission. The bill of exception taken to this action recites that the trial began on December 17th, and was concluded December 18, 1920, and the jury trying the cause returned its verdict in response to special issues submitted December 18, 1920, and was discharged. On December 20, 1920, appellant filed with the clerk its motion for judgment as above set out, for the reason that the evidence failed to show that it had jurisdiction to render judgment, and on December 22, 1920, came on to be heard the respective motions of plaintiffs and defendant for judgment, at which time, on December 20th, the appellee filed with the court its application in writing, asking the court to permit it at that time to introduce into the record of said cause a certified copy of plaintiff's permit. It was objected to on the ground: (1) That the cause was tried before a jury and the jury discharged, and appellant would not have an opportunity to contest the evidence before the jury in the event it should so desire; (2) that it was improper and prejudicial to the rights of appellant after discharging the jury; (3) that the court was powerless to render judgment upon any evidence other than the evidence introduced in the record for and during the trial in the presence and hearing of the jury; (4) that appellant was not required to offer any evidence of a defensive nature to appellee's cause, and until appellant, by legal and competent evidence, made a prima facie case, and that appellant, seeing appellee had failed from the evidence to make such case, was not bound to offer any evidence in defense to appellee's cause of action, and of which right it is now deprived. The trial court signed the bill qualifying it by the statement that, at the time of admitting the certificate, he informed counsel for appellant that the court would give him opportunity to controvert the permit and the evidence thereof at that time, if he desired so to do, or if counsel would state to the court that he would be at any future time able to controvert said evidence the court would order a mistrial in this case or continue it until the next term, in order to give counsel such opportunity, but counsel for appellant stated in open court that he was unable to make such representations to the court; that his clients and all of his witnesses were out of the city; and that he had no time during this term of court to make investigation of the records at Austin, to see whether said company was authorized to do business in the state or not.

[1] The Supreme Court has held that it is necessary for a foreign corporation to prove it had a permit to do business in Texas at the time the contract sued upon was made, in order that the court might enter judgment in its favor. Taber v. Interstate Building, etc., 91 Tex. 92, 40 S. W. 954. This proof, we take it, must be made in the trial of the case.

[2] So long as the case stands open for the consideration of the court at the term at which the trial occurs, it cannot be considered concluded. A trial is incomplete until all the issues of law as well as of fact have been determined and final judgment entered. Railway Co. v. Joachimi, 58 Tex. 454; Hill v. State, 41 Tex. 253.

[3] Where there is no evidence introduced

during the trial or before final judgment showing the corporation had secured a permit to do business in Texas, the only judgment which can be entered is one of dismissal. Smythe v. Ft. Worth, etc., 105 Tex. 18, 142 S. W. 1157. We believe it may be said that the suit abates because there is no proper party plaintiff shown by the evidence. The contract is not void, for a legal right may exist, but as a penalty the offending corporation is barred from a judgment in the state courts. State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564; David Lupton's Sons Co. v. Automobile Club, 225 U. S. 489, 32 Sup. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699; Temple v. Riverland (Tex. Civ. App.) 228 S. W. 607(8).

[4] It occurs to us under Rev. St. art. 1985, where a jury is selected to try issues of fact, they only try those submitted to them. If there are other facts necessary to the judgment the trial judge passes on them, and to that extent the case is tried before the judge. The Supreme Court, interpreting the above article, said:

"But the last provision requires the appellate court to treat an issue not submitted or requested as so found by the trial court, as to sustain the judgment, if there be evidence to support such a finding. The consequence must necessarily be that when the trial court has expressly submitted some issues and excluded others and neither party has put in writing a request for the submission of those excluded, they must be regarded in the appellate court as having acquiesced in such action and consented for the trial judge to determine from the evidence the issue not submitted. It is only by a written request that the party puts on record his dissent from the action of the court and his insistence upon the right to have the jury, rather than the judge, decide the point in issue." Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132.

[5] So the issue whether appellee obtained a permit to transact business in Texas was left for the judge to determine. The appellant did not insist "upon the right to have a jury rather than the judge decide the issue." On that issue it was a trial before the judge. It has been expressly held in the trial of the case before the court, without the aid of a jury, it is not too late, after argument closed and before judgment is entered, to receive testimony, unless it is shown that the party complaining was deprived of a privilege or right by the admission of the testimony. Meyers v. Maverick (Tex. Civ. App.) 28 S. W. 716. And in trials before a jury, where the issue is for the jury, the same rule has been followed.

[6] It is held that article 1952, which provides in effect that the trial court may, at any time before the argument is closed, permit either party to supply an omission in the testimony, is merely directory, and a party complaining of its infraction must, in order to obtain a reversal of the judgment, show that he has been injured. Western Union Telegraph Co. v. Roberts, 34 Tex. Civ. App. 76, 78 S. W. 522; Guy v. Metcalf, 83 Tex. 37, 18 S. W. 419; Railway Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Puckett v. City of Ft. Worth (Tex. Civ. App.) 180 S. W. 1115 (2, 3); Pierce Oil Corporation v. Gilmer Oil Co. (Tex. Civ. App.) 230 S. W. 1116 (9); Priddy v. Tabor (Tex. Civ. App.) 189 S. W. 111 (4); Meserve v. Folsom, 62 Vt. 504, 20 Atl. 926; Clavey v. Lord, 87 Cal. 413, 25 Pac. 493; Riverside Portland Cement Co. v. Masson, 69 Or. 502, 139 Pac. 723, Ann. Cas. 1916A, 127; 38 Cyc. 1360, 1367. The appellant cites the case of Payne v. Ellwood (Tex. Civ. App.) 163 S. W. 93, by this court. That case simply held that the trial court could not substitute his findings for that of the verdict of the jury on an issue of fact submitted to the jury for their findings. It was not held therein that the court could not find a fact or issue not submitted to the jury. That case is not authority on the question here presented. It is not shown on this appeal that the appellant has been deprived of any right guaranteed to it by the action of the trial court. The certificate of the Secretary of State was in proper form and in compliance with the statute. It conclusively established that appellee had secured a permit to transact business in this state. If it had been offered before the jury and appellant had requested the submission of the issue as to a permit to appellee it would have been the duty of the trial court to have instructed the jury to find that appellee had such permit, and that the certificate was conclusive of that fact. There in fact would have been no issue of fact to be determined by the jury. The trial court offered to order a new trial if appellant could or would assure him that it would assail the permit granted to the appellee by the Secretary of State. This appellant refused to do. The petition in this case had been on file for more than a year, and alleged that appellee had a certificate to do business in this state, and this was a sufficient notice to appellant that appellee would prove the same upon the trial.

We know of but one method of proving the permit, and that is by proper certificate from the records of the state department. These were accessible to the appellant before the trial, and if the facts were not as stated in the certificate or in the petition, appellant should have ascertained the fact before the trial; at least on this ground appellant cannot claim surprise. It is not contended by the bill of exception that appellant failed to develop its defense or omitted the introduction of any fact or testimony thereon which it could and would have done but for the failure to make proof of the permit. It is stated as a ground of objection

that appellant was not required to offer any evidence of a defensive nature until appellee had made a prima facie case, and that appellant, seeing that appellee had failed to make such case, was not bound to offer any evidence, but could refuse to do so. It is not shown as a fact that it did fail on that account to introduce any testimony or to develop its defense; on the contrary, this record indicates that the case was fully developed upon its merits, and the jury, requested by both parties and the judge, submitted the issues to determine the merits of the controversy between them. It should be shown by the appellant that the action of the court deprived it of some right to which it was entitled. The introduction of the certificate was purely formal, and, while technically necessary, it was not made to appear the verdict would have been affected had it been offered in the regular order of trial, or that appellant could or would have introduced other and further testimony supporting its defense. This was not such an error as in our opinion amounted to a denial of the rights of appellant, and such as was reasonably calculated and probably did cause the rendition of an improper judgment, or such as probably prevented the appellant from making a proper presentation of the case to this court. Rule 62a (149 S. W. x). The assignments and propositions will be overruled.

The appellant's fourth, fifth, sixth, and eighth assignments assail the action of the trial court as error in refusing to instruct a verdict for appellant and in rendering judgment for appellee, for the reason that the uncontroverted evidence established no cause of action in favor of the appellee as against appellant upon various and sundry grounds, which the evidence, it is asserted, established. The propositions presented under the above contention in effect are: (1) On rescission for fraud a party cannot speculate on the situation, but must act promptly after discovery of the fraud; if he ratifies or affirmatively acquiesces in it, he cannot thereafter repudiate it; (2) if induced to enter into a contract by fraud, if he pays the purchase price, knowing thereof, he waives the right of rescission; (3) the contract to purchase an executory contract, by the terms of which a third party is to construct a storage tank, if he afterwards ratifies and affirms the contract, though originally induced by fraud, and if he retains the contract so purchased, must use diligence to recover of the third party before he can recover damages upon an action for deceit against the party from whom he purchased the contract; (4) a party who purchases such contract, and after ratifying the same, before he can recover from his vendor damages for deceit, he must allege and prove the value of the contract so ratified;

(5) a purchase of such contract and after ratification he must prove that the contract of the third party is without value and the maker thereof is insolvent; (6) if he pays the consideration for the contract and negotiates with the maker of the contract and accepts promises of the third party to erect another and different tank in fulfillment of the contract so acquired by him, which the third party fails to perform, he waives his right of rescission on his contract to purchase, and also waives any and all rights of any cause of action he had against the one from whom he purchased for damages. The assignments and propositions all appear to be based upon the theory that appellee's action is on the contract with appellant, which appellant alleges to have been in writing. Its allegations are, in effect: That the negotiations culminated in an agreement in writing in the form of a letter from appellant to appellee, dated September 13, 1919, and accepted by appellee. That thereby appellant assigned all of its right and interest in and to a contract with one Hagerman & Co. That thereafter appellee entered into a new contract with Hagerman & Co., under the terms of which it agreed to release that company from the performance of the contract, and instead thereof made an agreement with Hagerman materially different from the original contract, whereby appellee agreed to accept a different tank. Appellee made the last agreement upon its sole responsibility, thereby annulling the contract assigned to it by appellant. That appellee made no demand upon appellant until after it ascertained that Hagerman would not comply with the new agreement.

The jury, in answer to special issues, found, in effect, that appellant, through its agent, Sigler, at the time of the trade, stated that the storage tank had been shipped by the Garvey Tank Company, and was then on board railroad cars at Electra, Tex.; that the bill of lading was in the possession of appellant at Prescott, Ariz., at that time, and that such representations were not true. That appellant, through its agent at the time the trade was made, did not accept the written transfer introduced in evidence and signed by the appellant by Sigler and appellant company and offered in evidence as Exhibit A to appellant's answer. At this point we will state the effect on the alleged agreement, which is in the form of a letter by appellant, addressed to appellee, bearing date September 13, 1919, stating in effect:

We have this day sold to you all our right, title and interest in and to our contract with H. L. Hagerman & Co., for one 55,000-barrel steel tank, complete with wood cover, to be erected by Hagerman, at or near Burkburnett. The agreed price with Hagerman is the sum of $23,000, upon which we have paid the sum of

$14,500, leaving a balance due Hagerman upon completion of the tank, the sum of $8,000. We have this day sold to you our interest in this contract for the sum of $16,000, the receipt of which is acknowledged. "It is understood and agreed that we shall not be held in any way responsible for the completion of the fulfillment of this contract. In other words, we are selling you our interest in the above contract only."

This is signed by appellant. There appears on it no indorsement evidencing an acceptance by appellee. The jury further found that Sigler did not believe the statements he made to appellee's agents while negotiations were in progress between them for the transfer of the contract. They further found, in answer to issues requested by appellee, that previous to the delivery of the draft for $16,000 Sigler represented that the materials in question were then on board cars at Electra, Tex.; that he represented in such negotiations that his company would cause to be delivered to appellee bills of lading embracing such material; that such representations were material inducements to appellee, and but for which it would not have entered into the contract with appellant and have given the draft in question; that under the contract appellant agreed as part thereof to deliver, or cause to be delivered, to appellee the bill of lading embracing the material in question.

The facts supporting the jury's finding and those supporting the judgment are sufficient for that purpose. The trial court, properly we think, refused to instruct a verdict for appellant, and his judgment is supported by the evidence.

On the 9th day of July, 1919, appellant entered into a contract with H. L. Hagerman & Co. In consideration of $22,500 Hagerman agreed to sell and erect in the vicinity of Burkburnett and appellant agreed to buy and pay the above sum for the erection and furnishing all necessary material and for the performance of all labor necessary to complete a 55,000-barrel storage tank, the contract giving the specifications of the tank, material, etc. The testimony warrants the finding that some time before the 13th of September, 1919, Hagerman had shipped the oil tank, and that it was on the track at Electra; that appellant paid a draft on Hagerman for $14,000 for the tank, and that there was a bill of lading for it at the bank. This tank Hagerman sold, as he informed Sigler, in order to stop demurrage, and when Gilliland and Kyle, appellee's agents in the transaction, called on Hagerman about the tank, Hagerman then told Sigler it had been sold 30 days before, and that he, Sigler, knew that fact. This was after the $16,000 draft had been executed and placed in the bank to the appellant's credit by Sigler. The appellee first began negotiations for the tank by telegram, dated September 10, 1919, addressed to Sigler, and appellant, which states:

"A Mr. Ware advised us that you had a 55,000 steel tank for sale. If true, wire price, location of tank and who manufactured same."

Appellant answered September 11, 1919:

"Our contract with Hagerman here on new Garvey, Chicago tank on track Electra price complete with roof $24,000, twenty-five days limit."

The appellees answered by wire they would accept, provided specifications were satisfactory, and that their Mr. Kyle would call on them to arrange. Kyle, in company with Mr. R. C. Gilliland, called on Mr. Sigler, on the 12th, but Sigler on account of the suggestion to him by some one in the office, that appellant was then negotiating with some one else, postponed the conference until the 13th, at which time the trade was completed and the draft drawn and delivered by Mr. R. C. Gilliland, who was the vice president of appellee company. Their testimony is to the effect that the agreement was to pay $16,000 for the tank and Hagerman, $8,000 for erection. Sigler represented to them that the tank was then on the track at Electra, and the bill of lading was at appellant's office in Phœnix, Ariz., as well as the contract with Hagerman & Co. It was then understood between the parties that appellee was paying a bonus of $1,500 or $2,000 for the tank which appellee was then very much in need of securing. Sigler apparently does not deny that he told them the tank was on the track at Electra, but says he thought the bill of lading was then in the bank. Both Kyle and Gilliland testify positively the letter above set out was not then written and given them or accepted by them, which is the letter referred to in the verdict, marked Exhibit A, attached to appellant's answer, and found by the jury to have been sent after the draft was delivered. The witnesses testify that the letter was forwarded after that to the appellee to its office, and they knew nothing of it until after they learned that appellant had no tank at Electra. On this point they are flatly contradicted by Sigler, who says he dictated it and read it in their presence on the day the contract was entered into. The witness Kyle further testified that the delivery of the draft and the trade was on Saturday, and that on Monday they called on Sigler about the delivery of the tank, and that he suggested they would go and see Hagerman, which they did. Hagerman then told Sigler:

" 'That tank has been sold for 30 days perhaps, and is half. erected out there.' And Mr. Sigler asked him what right he had to sell his tank, and he said: 'I told you I could not hold this tank 30 days.' He said: 'That tank has been sold, and you know it; I could not hold it 30 days for you to find a location for it.'

We asked Mr. Sigler what he could do in regard to delivering us a tank, and he asked Mr. Hagerman if he had any other tanks he could deliver. We told him if he could furnish us a tank with the same specifications within a short time we would still take it. We told that to Mr. Sigler, and he said he would prevail on Mr. Hagerman to furnish us a tank within a limited time. I don't remember any further conversation at that time."

He further testified that they never did deliver him a tank, and the contract with Hagerman was sent to them from Phœnix, Ariz., by appellant. In testifying to another visit to Sigler after Monday, in company with Mr. Fisher, their lawyer, he said:

"We asked him what he was going to do in regard to delivering us this tank. I told him I was not dealing with Hagerman & Co. I told him I was dealing with Mr. Sigler. We told him we would look to him for delivery of the tank, and if he could not deliver the tank we wanted the money back; at that time I do not think we had received the contract; I don't think we had any further negotiations with Mr. Sigler. I called around on several occasions to see Hagerman to see what he was going to do about delivering the tank, for him to deliver it to Sigler for us. We never made any contract with Mr. Hagerman."

This witness repeated several times that he never made any contract with Hagerman, and that they were not looking to Hagerman to furnish the tank, but that Hagerman said he was going to get the tank; that he was going to furnish it to Sigler, but there never was any suggestion by anybody that they released Sigler and took Hagerman. They never made any contract with Hagerman to furnish a tank in lieu of the one Sigler was to furnish. The facts in this case also show that the draft for $16,000 was drawn payable to the order of Sigler by R. C. Gilliland on appellee, and this was indorsed by Sigler on the back payable to the order of appellant company. It was deposited in the bank at Wichita Falls, to the credit of the appellant, and they got credit for it. It was deposited on the day the draft was given. The evidence shows that on Monday, September 15th, appellee first discovered that the tank that had been sold to it by appellant had been disposed of by Hagerman, and on that date, September 15th, R. C. Gilliland, who was vice president and had executed the draft, telephoned Widner, another vice president of appellee at Tulsa, Okl., advising of the fact that the tank he had expected to get from appellant had been sold. Widner testified that on the 16th the draft was presented to him for payment and he refused to pay it because he had learned that the tank for which it was given could not be delivered, but on the same day, upon instructions from Mr. J. W. Gilliland, president of appellee company, he paid the draft. J. W. Gilliland testified that as soon as he discovered the draft had been protested he directed Widner to pay the same, for the reason that the draft had been drawn by an officer of the company, and if the draft had been obtained without consideration he would endeavor to obtain the return of the money through the courts.

[7, 8] We think the evidence sufficient to support the finding that the letter upon which appellant relies, of date September 13, 1919, was not agreed to as the contract or accepted as such by appellee, but that it was written and sent after the trade was made, as found by the jury. Under the findings of the jury and the evidence by appellee's witnesses, they bought a tank, on the track at Electra, for which appellant represented it had a bill of lading, evidencing title thereto in appellant. Appellant did not accept the chance of a tank upon a contract executed by Hagerman. It paid appellant the price of the tank, together with a bonus of $2,000. The appellant agreed to deliver a certain tank by delivering the indices of title, the bill of lading, then stated to be in its possession. Railway Co. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861. The jury found that Sigler knew when he represented that appellant had such tank then on the track to which it had a bill of lading that this was not true. The evidence will support this finding. The appellee did not purchase a chance, but purchased the thing itself. The representations were false, as made by Sigler, and whether he knew it or not, he should have known that appellant had no tank on the track at Electra to which it had a bill of lading. It was a fraud in law, whether one in fact or not. This gave appellee the right to rescind and recover the money paid.

[9] The evidence is sufficient to support the judgment of the trial court that appellee did not release appellant and look to Hagerman. After discovering the trap into which they had been led they insisted on a tank, or their money. Evidently it was immaterial who furnished the tank, whether appellant or Hagerman, but one thing appears certain from the evidence; they did not release appellant and look alone to Hagerman. We see no evidence of a merger or novation in this case of the original contract, or of an unreasonable delay in demanding a return of their money or in suing for rescission. They demanded a return of the money upon learning of the fraud, and they brought suit to rescind October 1, 1919, 15 or 16 days after learning of the fraud.

[10] To entitle one to rescind he is only required to act with reasonable promptness, and a liberal extension of this rule is allowed where the delay has not been willful nor exercised for an improper purpose. 2

Black on Rescission & Cancellation, §§ 546, 547. The testimony justified the court in so finding. There was nothing to return except the contract, and this was tendered in a reasonable time, and nothing in the record which shows the parties could not be placed in statu quo by rescission. Railway Co. v. Cade (Tex. Civ. App.) 93 S. W. 124; Romine v. Howard (Tex. Civ. App.) 93 S. W. 690.

[11] We do not think the payment of the draft by appellee, after learning that appellant did not have the tank, shows a waiver of the right to rescind, but the testimony indicates that the money was paid because an officer of appellee company had issued the draft, and for that reason it was deemed best to pay it and look to the courts for a recovery of the money paid. This would seem to indicate the purpose was to maintain the credit of appellee commercially by not permitting its paper to go to protest, and was not with any intent to waive the right to rescind or with the intent to ratify a fraudulent contract. Acts or declarations alleged as creating ratification must be shown to have been given or performed with the intention of ratifying, or must be of such nature or tenor that a purpose to ratify may be unmistakably inferred. The payment of the draft obtained by fraud, though with knowledge of the facts, does not operate as a confirmation of the previous transaction, unless made with that intent. 2 Black on Rescission & Cancellation, § 611; Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854; North American, etc., v. Miller (Tex. Civ. App.) 193 S. W. at page 758, (6).

[12] The vice president, R. C. Gilliland, appears to have had authority to draw the draft on appellee company. In such a case the drawer and drawee were in effect the same person, and the drawee is liable without formal acceptance. This draft had been delivered and paid by the bank before there was any knowledge of the fraud. This in effect was a payment before knowledge and appellee's acceptance thereafter, we think, should have no probative force in proving or establishing waiver or ratification. Uniform Negotiable Instrument Act; Gen. Laws, 36th Legislature, c. 123, p. 190, § 130 (Vernon's Ann. Civ. St. Supp. 1922, art 6001—130); Raymond v. Mann, 45 Tex. 301; Alex Wolert Co. v. Citizens' Bank (Tex. Civ. App.) 234 S. W. 124; Watauga County Bank v. McQueen, 130 Tenn. 382, 170 S. W. 1025; 1 Danl. Neg. Inst. (6th Ed.) §§ 128, 482. The facts being sufficient to support the findings of the jury and sufficient to support the finding by the court that there was no waiver or ratification of fraud in the contract, such as to estop appellee from suing to rescind, there was no error on the part of the court in refusing a peremptory charge or in rendering judgment for rescission and in favor of appellee to recover the money paid on the contract.

We think there is no reversible error, and the judgment will be affirmed.