**Any Kramer et al., trading as Kramer Brothers & Mages, Appellants, v. Mid-City Trust & Savings Bank, Appellee.**

### Gen. No. 27,335.

1. BANKS AND BANKING—*inapplicability of law as to acceptance of drafts to action by depositor to recover withheld deposit.* In an action against a bank for a wrongful deduction from plaintiffs' account representing certain drafts drawn on plaintiffs and accepted by the bank, the provision of the Negotiable Instruments

Act requiring written acceptance of drafts is not applicable.

2. BILLS AND NOTES—*character of instrument where drawer and drawee identical.* Where the drawer and drawee of a draft are the same person, the holder may, under section 129 of the Negotiable Instruments Act (Cahill's Ill. St. ch. 98, ¶ 151), treat the instrument as either a bill of exchange or a promissory note.

3. BILLS AND NOTES—*draft by authorized agent on principal as draft of principal.* Where a draft is drawn by the recognized agent of the drawee authorized to draw it, the draft is equivalent to one drawn by the principal upon himself and need not be accepted by the drawee to bind it under the Negotiable Instruments Act.

4. BANKS AND BANKING—*proof of demand in action by depositor to recover deposit.* In an action against a bank for the wrongful deduction of certain drafts from plaintiffs' account and refusal to pay the amount on demand, no proof of refusal to pay nor of any request or demand for payment is made by testimony that one of plaintiffs told defendant's cashier that they did not authorize the payment of the drafts and that defendant then offered to restore plaintiffs' credit if they would furnish an affidavit that the drawer of the draft was not authorized to draw on them but he refused to make such affidavit, saying it would be contrary to facts.

Appeal from the Municipal Court of Chicago; the Hon. SAMUEL H. TRUDE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed July 11, 1922. Rehearing denied July 24, 1922.

KAMFNER & HALLIGAN, for appellants.

GUSTAV E. BEERLY, for appellee; ELLIS S. CHESBROUGH, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This appeal is from a judgment entered upon a verdict in favor of defendant bank in a suit brought by appellants, a copartnership which had a checking account therein, claiming a wrongful deduction of $3,000 from their account, and refusal to pay them when requested so to do. The bank denied any indebtedness and claimed justification for the so-called deduction, which consisted in the payment of two drafts for

$1,000 and $2,000, respectively, drawn upon plaintiffs.

As we view the case the essential facts the evidence tended to establish are about as follows:

Plaintiffs were in the commission business in Chicago. For some years the firm Goldstein Brothers, of Benton Harbor, Michigan, had been buying produce for them. Mannie Goldstein, the son of one of them, was in their employ buying for plaintiffs. In the fall of 1919, an arrangement was made between Goldstein Brothers and plaintiffs for Mannie to go to northern Michigan and buy potatoes and ship them to plaintiffs. Mannie was to draw a draft on plaintiffs for everything he shipped. Plaintiffs and Goldstein Brothers were to divide profits equally. Mannie purchased the potatoes, deposited drafts on plaintiffs in a Charlevoix bank, which gave him credit thereon and forwarded the drafts to a Chicago bank, which in turn sent them through a clearing house to defendant bank, as, pursuant to the arrangement, the drafts were made chargeable to plaintiffs at said bank. These drafts were not sent through for collection and were treated as cash items in accordance with a custom among Chicago banks. Several similar drafts, so drawn before those in question, were paid by defendant and deducted from plaintiffs' account without objection and with plaintiffs' knowledge and consent. But it was claimed by plaintiffs that there was no authorization for the deduction of the two drafts in question.

These two drafts were sight drafts payable to the order of the Charlevoix bank, dated October 16 and 20, 1919, respectively. Each was paid the second day after its date through the Chicago clearing house. The account was overdrawn on the 21st to the extent of $1,349.49, which was after the $1,000 draft had been honored. On each occasion of the receipt by the bank of the drafts in question it called up plaintiffs' firm by telephone and was advised by its bookkeeper that it was all right to pay such drafts, and that the balance

of the account would be made good. The record supports the inference that one of the plaintiffs knew of such authorization and promise. At the end of October defendant bank returned said paid drafts to plaintiffs with the statement of their account. At the time the bank notified plaintiffs that the account was overdrawn, one of plaintiffs talked with its bookkeeper in charge of the account and not until November 7, after some disagreement between plaintiffs and the Goldsteins, was any question made as to the authority of the bank to pay the drafts.

We deem it unnecessary to go into further details. Appellants seek a reversal on the ground that there was no written acceptance of the drafts, as required by the Negotiable Instruments Act, and that the court erred in not giving instructions to that effect. Other instructions purporting to state the law with respect to negotiable instruments were also refused, and properly, we think. This suit was not brought upon the drafts and, as we view it, is not a case which calls for the application of the provisions of the Negotiable Instruments Act. It was brought for a wrongful deduction of the $3,000. The evidence tends strongly to show that plaintiffs authorized the bank to pay the drafts, and a promise by plaintiffs to make good the overdraft, which was done. Had this suit been brought by a holder of a draft on plaintiffs that had not been accepted in writing, the instructions pertaining to negotiable instruments would have been applicable. But as the suit was brought, not on the instrument itself but against one who was not a party to it or holder of it, and who paid the same upon plaintiffs' authorization and promise to pay, the law of negotiable instruments has no application.

Where the drawer and drawee are the same person, then under section 129 of the Negotiable Instruments Act [Cahill's Ill. St. ch. 98, ¶ 151] the holder may treat the instrument either as bill of exchange or a promis-

sory note. The drafts in question were drawn by Mannie Goldstein.. He was plaintiffs' recognized agent to purchase the potatoes, and authorized by them to draw on them to pay for the same. The drafts seem to have been cashed by the Charlevoix bank upon knowledge of the relation of the parties to the draft. In such a case it has been held that the draft is equivalent to one drawn by the principal upon himself and need not be accepted by the drawee to bind it under the Negotiable Instruments Act. (*Artesia First Nat. Bank v. Home Ins. Co. of New York,* 16 N. M. 66, 113 Pac. 815.)

But plaintiffs made no proof of a refusal by defendant to pay them nor of any request or demand upon it so to do, as alleged in their statement of claim. The only proof that could be said to have any bearing thereon was that one of the plaintiffs told defendant's cashier that they did not authorize the payment of the drafts, and defendant then offered to restore plaintiffs' credit if they would furnish an affidavit that Mannie Goldstein was not authorized to draw on them, but he refused to make it, saying such an affidavit would be contrary to facts. This was not tantamount to proof of a demand and refusal. Consequently we do not feel justified in disturbing the judgment. Accordingly it will be affirmed.

*Affirmed.*

MORRILL and GRIDLEY, JJ., concur.