## PENNSYLVANIA R. CO. et al. v. BROWN.

### No. 8481.

Circuit Court of Appeals, Sixth Circuit.

May 9, 1940.

Donald G. Slawson and W. N. Snow, both of Grand Rapids, Mich., and A. W. Blackman, of Boston, Mass. (Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., and Paul F. Perkins and L. H. Gulick, all of Boston, Mass., on the brief), for appellants.

Robert N. Burchmore and John S. Burchmore, both of Chicago, Ill. (Nuel D. Belnap and Walter, Burchmore & Belnap, all of Chicago, Ill., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment in an action brought by appellee under the provisions of Title 49 U.S.C., Section 20(11) and Sections 89, 90, and 91, 49 U.S.C.A. §§ 20(11), 89-91.

Appellee, doing business in Kalamazoo, Michigan, as the Kalamazoo Hide & Fur Company, on August 7, 1937, shipped two carloads of wool to Boston, Massachusetts, one carload over the Pennsylvania Railroad, and the other over the New York Central Railroad, appellants. Each appellant issued its order bill of lading to appellee, describing the wool. Each bill of lading showed consignment to appellee's order with direction to notify Ryder & Brown Company, a wool brokerage company, on arrival of the cars in Boston. The New York, New Haven and Hartford Railroad (hereafter called the New Haven) was the terminal carrier for both shipments.

Each bill of lading provided [Section 4 (a)] that if the property was not removed by the person entitled to receive it within the free time allowed by the tariffs after notice of the arrival of the property at destination had been duly sent or given, the property might be kept in the car subject to demurrage charges or removed to and stored in a public or licensed warehouse at the place of delivery without liability on the part of the carrier. Fred H. Perkins, agent of Ryder & Brown Company, who bought the wool for them, drew drafts on Ryder & Brown Company, naming appellee as payee. The drafts were in the amounts of the price agreed to be paid for the wool, payable in twenty days, and were to be held until paid. Appellee attached each draft to its respective bill of lading, endorsed it for delivery to Ryder & Brown Company, and sent the papers to his bank in Kalamazoo, which credited his account in the face amounts of the drafts and forwarded the documents to the First National Bank of Boston for collection. Ryder & Brown Company accepted both drafts on August 11, 1937, but never paid them, nor at any time secured possession of the bills of lading. Appellee subsequently recovered the drafts and bills of lading and paid the Kalamazoo bank the face amount of the drafts with interest.

When the shipments arrived in Boston, notice of arrival was given to Ryder & Brown Company, and at its request the delivering carrier released the shipments. The bills of lading were not surrendered, but warehouse receipts from Melcher Street Stores, Inc., were presented for the shipments and the wool was delivered there. The warehouse was in the same building as Ryder & Brown Company, from which it rented space. The president

of each corporation was the same, and five of the directors were the same persons. The District Court held that the two corporations were in effect one organization, and that the warehouse was completely controlled by Ryder & Brown Company.

During August and November, the wool was opened, graded, commingled, and sold, and became untraceable. Appellee received no notice and had no knowledge of the disposition of the shipments until March, 1938, and in April, 1938, filed a claim with each appellant, seeking recovery for loss of the wool, which claims were disallowed. This action was then filed.

The District Court found that appellee is the owner of the wool and the lawful holder of the bills of lading, and that each appellant is individually liable for any loss occurring on the line of the New Haven under the provisions of Title 49 U.S.C., Section 20(11), 49 U.S.C.A. § 20(11). The court held that appellants owed appellee the duty to exercise due care in the choice of a warehouse or to surrender the goods upon receipt of a bond or certified check in accordance with the tariffs, and that the shipments were wrongfully delivered to one not lawfully entitled to possession thereof, and without surrender of the bills of lading, in violation of Section 10 of the Federal Bills of Lading Act (Title 49 U.S. C., Section 90, 49 U.S.C.A. § 90). The court entered judgment against each appellant in the amount, with interest, of the agreed price for the wool delivered to it.

Appellants contend that as the drafts for the shipments were for payment in twenty days, the title to the goods passed to Ryder & Brown Company when it accepted the drafts, and it was entitled to possession of the wool; that acceptance of the drafts was the equivalent of the making of a note in payment for the goods, and that the transaction in effect constituted a sale on credit. In the alternative, appellants contend that even assuming title in appellee, they fulfilled their obligation by storage in a public or licensed warehouse; that they were under no obligation to use prudence in the selection of a warehouse, provided it was licensed, and further, that assuming that they were required to exercise such prudence in selection, the evidence does not show negligence or bad faith on the part of the New Haven. Also appellants contend that appellee is estopped by his inaction in failing to direct disposition of the goods as consignee, and that this in effect ratified the action of the New Haven in the storage of the wool.

The District Court concluded as a matter of law that "Plaintiff [appellee] is and at all times has been the owner of the wool shipped over the lines of the defendants' [appellants'] railroads, and is the lawful holder of the bills of lading."

Appellants rely upon Section 41 of the Uniform Bills of Lading Act in force both in Michigan and Massachusetts, which provides:

"Where the seller of goods draws on the buyer for the price of the goods and transmits the draft and a bill of lading for the goods either directly to the buyer or through a bank or other agency, unless a different intention on the part of the seller appears, the buyer and all other parties interested shall be justified in assuming:

    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"(b) If the draft is by its terms payable on time, extending beyond three days after demand, presentation or sight (whether such three days be termed days of grace or not), that the seller intended to require acceptance, but not payment of the draft before the buyer should be entitled to receive or retain the bill."

The drafts were drawn by Fred H. Perkins, agent for Ryder & Brown Company, and accepted in writing by Ryder & Brown Company on August 11, 1937, payable as twenty-day time drafts. Appellants contend, therefore, that through application of Section 41 of the Uniform Bills of Lading Act, the bill of lading is intended to secure payment of the draft, and that the nature of the transaction indicates that an executory contract of sale was contemplated to become complete on the acceptance of the draft by the drawee. Under such circumstances the drawee at once becomes entitled to the goods and the carrier is justified in making delivery to the drawee. Hutchinson on Carriers (3d ed.) Section 185; National Bank of Commerce v. Merchants' National Bank of Memphis, 91 U.S. 92, 23 L.Ed. 208. Therefore, appellants urge that the New Haven delivered the wool to the true owner and was not required to take up the bills of lading under the specific provision of Section 9 of the Federal Bills of Lading Act that a carrier is justified in delivering goods to one who is "lawfully entitled to the possession of the goods." Title 49, Section 89, U.S.C., 49 U.S.C.A. § 89.

These contentions, however, ignore the existence in Section 41 of the Uniform Bills of Lading Act, supra, of the phrase "unless a different intention on the part of the seller appears." Here, as later shown, a different intention does appear. Section 41 does not aid the appellants, because under the facts the buyer and the carriers were not justified in assuming that the seller intended to pass title on acceptance of the drafts. Also this section applies where the seller draws upon the buyer. But here the buyer's agent drew upon the buyer and the seller was payee. In this situation Section 130 of the Uniform Negotiable Instruments Act applies, which provides that where in a bill drawer and drawee are the same person, the holder may treat the instrument at his option either as a bill of exchange or a promissory note. Appellee treated it as a bill of exchange.

Also the drafts and bills of lading were not transmitted to the buyer, but were held by the Boston bank as agent, for collection. The record establishes that the seller intended that the goods should not be delivered until the drafts were paid. The bills of lading were at no time delivered to the buyer, but were held by the seller's agent for collection, which in turn notified the Boston bank that "no collateral is to be released until a draft is taken up in full, and then only the collateral covered by the bill of lading attached to such draft." Appellants and Ryder & Brown Company acquiesced in this construction of the transaction, at no time indicating either by words or conduct that they considered Ryder & Brown Company to be entitled to the possession of the bills of lading upon acceptance of the drafts. In addition to the statutes heretofore cited, the following provisions of the Uniform Bills of Lading Act are pertinent:

Section 40 "(b) Where by the bill the goods are deliverable to the seller or to his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. * * *

"(c) Where by the bill the goods are deliverable to the order of the buyer or of his agent, but possession of the bill is retained by the seller or his agent, the seller thereby reserves a right to the possession of the goods, as against the buyer."

Cf. Dows v. National Exchange Bank, 91 U.S. 618, 631, 23 L.Ed. 214. The District Court was correct in concluding that appellee was the lawful holder of the bills of lading and owner of the wool.

It is next contended that assuming that appellee had title to the wool, it was rightfully surrendered by New Haven because it was stored in a licensed warehouse under the provisions of Section 4(a) of the bill of lading, which permits such storage if the property is not removed by the party entitled to receive it within the free time allowed by the tariffs.

Whether, as contended by appellants, the tariffs relating to notice apply only to cases of demurrage and are not controlling here, we need not decide, for the record shows that the delivery by the New Haven was unlawful, and that appellants are therefore liable.

Melcher Street Stores, Inc., possessed a license duly issued by the Commonwealth of Massachusetts to engage in the warehouse business. However, the finding of the court that this was a dummy corporation completely controlled by Ryder & Brown Company is amply sustained by the record. All of the directors of Melcher Street Stores, Inc., were directors of Ryder & Brown Company. The warehouse had but one employee, Hoffman, who was also traffic manager and superintendent of buildings for Ryder & Brown Company. No separate warehouse was maintained by Melcher Street Stores, Inc., but it occupied space in the building of Ryder & Brown Company, the rent being paid, not in cash, but by means of an open account whereby the warehouse charges of Ryder & Brown Company were offset against the rental charges. While wool from other carriers than New Haven was stored with Melcher Street Stores, Inc., so far as this record shows all wool stored there was consigned to Ryder & Brown Company.

Notice to New Haven of the relationship between the warehouse and Ryder & Brown Company is established by the nature of the arrangement entered into between it and Ryder & Brown Company. An oral agreement was made in the office of the president of the two corporations between him, the freight cashier of the New Haven, and Hoffman, the warehouse employee and traffic manager of Ryder & Brown Company. It is a fair inference that Hoffman was known to the freight cashier of the railroad to be acting in both capacities. The office of Melcher Street Stores, Inc., consisted of the desk occupied

by Hoffman at the far corner of Ryder's office. This fact must have been plain and significant to the cashier of the New Haven at that meeting. The agreement was, that on shipments of wool arriving via the New Haven, of which Ryder & Brown Company was the party to be notified, the railroad might at any time release a maximum of eight cars upon the issuance of warehouse receipts in the name of Melcher Street Stores, Inc. The agreement applied only when bills of lading were not surrendered, and hence the New Haven was bound to know that the arrangement gave Ryder & Brown Company the opportunity of getting possession of consignments without payment and without obtaining the bills of lading. It is significant that all of appellee's shipments were required to be routed for New Haven delivery. This was true of the thirteen sales made by appellee in 1937. It is inconceivable that such an arrangement should be made unless the New Haven understood that it was to sanction the delivery of wool through the dummy corporation to Ryder & Brown Company without the knowledge and consent of the real owner, and without delivery of the order bills of lading. The freight charged on the consignments in suit was paid to the New Haven, not by Melcher Street Stores, Inc., but by Ryder & Brown Company. The provisions of the bill of lading and the various statutes heretofore cited were written for the protection of the shipper, and were violated by the carrier, for under Section 91, Title 49 U.S.C., 49 U.S.C.A. § 91, if a carrier delivers goods for which an order bill has been issued and fails to take up and cancel the bill, it is liable.

On the point of estoppel, appellee had no knowledge that the New Haven had delivered the wool to Melcher Street Stores, Inc., until March, 1938. Claim was filed against appellants in April, 1938, and the record presents no evidence of acquiescence or ratification by appellee of the delivery to Melcher Street Stores, Inc. The New Haven delivered the wool not because of appellee's failure to direct its disposition, but pursuant to its arrangement with Ryder & Brown Company, and hence the loss arises from its own unlawful conduct, and not from the acts of appellee. Therefore appellee is not estopped to bring this action.

The judgment is affirmed.